# LOUISVILLE TRUST COMPANY *v.* LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY COMPANY.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 263. Argued April 24, 1899. — Decided May 22, 1899.

The New Albany Railway Company, whose road was in several States, guaranteed bonds of a Kentucky railway company to a large amount. It attempted by suit to avoid this guarantee as *ultra vires*. Its contention was sustained by the Circuit Court, but that decree was reversed by the Circuit Court of Appeals, and this court has sustained that decision. After the decision of the Circuit Court of Appeals, Mills, a creditor of the company, commenced suit in the Circuit Court of the United States. The company appeared and confessed judgment, and execution was issued and returned unsatisfied. Thereupon the creditor filed a bill praying for the

appointment of a receiver for the entire road, and that the court would administer the trust fund, and order the road sold, and the proceeds from the sale divided among the different creditors according to their priority. The New Albany Company admitted the allegations of the bill, and interposed no objections, whereupon a receiver was appointed. These proceedings took place on the same day. Subsequently proceedings were commenced at different times for the foreclosure of different mortgages, all of which suits were consolidated. Then the Trust Company, as holder of some of the guaranteed bonds, intervened. Then a decree of foreclosure was entered, and a sale ordered, made and confirmed. Then the Trust Company filed another intervening petition, charging that Mills' proceedings had been procured by the New Albany Company for the purpose of hindering and delaying the general, or unsecured creditors in the enforcement of their debts, and praying that the decree of foreclosure might be set aside, and other prayers. This was denied, and a sale was ordered. An appeal by the Trust Company to the Circuit Court of Appeals resulted in the affirmation of the decree below. The proceedings being brought here on certiorari, it is *Held* that, under the circumstances as presented by this record, there was error; that the charge of collusion was one compelling investigation, and that the case must be remanded to the Circuit Court, with instructions to set aside the confirmation of sale; to inquire whether it is true, as alleged, that the foreclosure proceedings were made in pursuance of an agreement between the bondholder and stockholder to preserve the rights of both, and destroy the interests of unsecured creditors; and that, if it shall appear that such was the agreement between these parties, then to refuse to permit the confirmation of sale until the interests of unsecured creditors have been preserved.

THE facts in this case are as follows : The Louisville, New Albany and Chicago Railway Company, hereinafter called the New Albany Company, in 1889 and 1890 placed a guarantee upon $1,185,000 of the first mortgage bonds of a Kentucky railroad corporation. In April, 1890, the New Albany Company, guarantor, commenced a suit in the Circuit Court of the United States for the District of Kentucky against divers parties claiming to hold such bonds, to have the guarantee declared void. In 1894 that court rendered a final decree, sustaining its contention, and adjudging the guarantee *ultra vires* and void. 69 Fed. Rep. 431. From that decree the holders of the guarantee bonds appealed to the Circuit Court of Appeals for the Sixth Circuit, which, in June, 1896, reversed the decree of cancellation, and held the guarantee binding. 43

U. S. App. 550. On application of the New Albany Company
the case was then removed on certiorari to this court, and at
the time of the proceedings hereinafter referred to was still
undecided. Judgment therein has since been entered sustain-
ing the guarantee. *Louisville, New Albany and Chicago
Railway Company* v. *Louisville Trust Company, ante,* 552.

After the decision in the Circuit Court of Appeals, and on
August 24, 1896, one John T. Mills, Jr., commenced an action
in the Circuit Court of the United States for the District of
Indiana, alleging that he was a creditor of the New Albany
Company to the amount of $494,911.35. That company ap-
peared and confessed judgment, and an execution was issued
and returned unsatisfied. Whereupon Mills filed his bill of
complaint in the same court, based upon this unsatisfied execu-
tion, and praying the appointment of a receiver. The bill set
forth the property belonging to the judgment debtor, the New
Albany Company, alleged that its capital stock amounted to
$16,000,000, of which $7,000,000 was preferred; that its out-
standing funded debt, divided into five classes, amounted to
$7,700,000 in six per cent bonds, and $6,100,000 in five per
cent bonds. The bill also alleged the existence of a floating
debt, amounting to nearly $1,000,000, consisting of outstand-
ing notes and other obligations, held by the complainant and
other *bona fide* creditors. It then set forth the guarantee of
the bonds of the Kentucky railroad company, the proceedings
in court by which the guarantee had been sustained, and
averred that the officers of the defendant company reported a
diminution of current earnings by reason of a short wheat
crop and lessened traffic, and that it would be impracticable
to realize from the earnings after the payment of operating
expenses, taxes and rentals a sum sufficient to pay the shortly
accruing mortgage interest. The bill also alleged many mat-
ters, among others the fact that the lines of the New Albany
Company were in three different States and subject to the
jurisdiction of different courts, which seemed to justify the tak-
ing possession of the property by a receiver to prevent its dis-
memberment or any disturbance of its continued operations as
a common carrier. The prayer of the bill was:

"Inasmuch, therefore, as the complainant has no adequate remedy at law for the grievances hereinbefore stated and can only have relief in equity, he files this bill of complaint in behalf of himself and all others in like relation to the said property, and prays that due process of law issue against the defendant, the Louisville, New Albany and Chicago Railway Company, and that it be summoned to appear in this court and answer this bill, but without oath, all answers under oath being hereby expressly waived under the rules to stand to and abide by such orders and decrees as the judges of this court may from time to time enter in the premises; that for the purpose of enforcing the rights of complainant and all other creditors of said insolvent corporation according to their due equities and priorities, and to preserve the unity of the said railway system as it has been and now is maintained and operated, and to prevent the disruption thereof by the separate attachments, executions or levies, this court will forthwith appoint a receiver for the entire railroad. . . . That the court will fully administer the trust fund, in which the complainant is interested as a judgment creditor, and will for such purpose marshal all the assets of said insolvent corporation, and ascertain the several liens and priorities existing upon the said system of railways or any part thereof, and the amount due upon each and every of such liens, whether by mortgage or otherwise, and enforce and decree the rights, liens and equities of each and all of the creditors of the said Louisville, New Albany and Chicago Railway Company, as the same may be finally ascertained and decreed by the court upon the respective claims and interventions of several of such creditors or lienors in and to, not only the said line of railroad, appurtenances and equipment, or any part of them, but also to and upon each and every portion of the assets and property of the said insolvent corporation, and that said railroad and all the assets of such corporation shall be sold by proper decree of the court, and the proceeds divided among the different creditors according as their liens and priorities may be decreed by the court, and for such other and further relief as to the court may seem proper and as may be necessary to

further enforce the rights and equities of the complainant and all other creditors of such corporation."

The New Albany Company appeared by its general solicitor, filed its answer admitting the material allegations of the bill and interposing no objections; whereupon the court made an order appointing as receiver a gentleman who was the vice president of the company and its general manager. The order of appointment was in the ordinary form of such orders.

All of these proceedings, including the filing of the original complaint, the confession of judgment, the issue and return of the execution, the filing of the bill and the appointment of a receiver, took place on the same day, to wit, August 24. Up to this time there had been no default in any of the interest due on the several series of bonds. On November 12, 1896, the trustees in one of the mortgages, one executed May 1, 1890, filed a bill of foreclosure, alleging default in the payment of interest on November 1, 1896. On the same day the trustee in another mortgage, dated January 1, 1896, filed a similar bill, alleging default on October 1, 1896. On November, 24, 1896, the court, on application of the receiver, entered an order authorizing the receiver to borrow $200,000 on receiver's certificates, payable out of the earnings, and expend the same in the construction of new bridges, the repair of freight cars and engines, the ballasting and making new alignment of track, and the equipment of engines and cars with air brakes and automatic couplers. What action was taken under this order is not disclosed in the record, although the final decree provided for payment in advance of the bonds " of any indebtedness of said receiver which has not been or shall not be paid out of the earnings and income of the property coming into the hands of said receiver." On the 14th day of December, 1896, the trustee in a mortgage executed September 1, 1894, commenced foreclosure, alleging default on December 1, 1896. On the 21st of December, 1896, an order of consolidation was made of these several foreclosure suits.

On the 23d of January, 1897, the petitioner, the Louisville

Trust Company, filed its petition asking generally to be admitted to appear in the suit and to take such steps and proceedings in its own behalf as it might deem necessary, which petition was sustained, and leave granted accordingly. This petition alleged the indorsement heretofore referred to of the bonds of the Kentucky railway company by the New Albany Company, that it, the petitioner, was the holder of $125,000 of those bonds, and had obtained a decree adjudging the validity of the guarantee.

On the same day the various parties to the foreclosure suits having all appeared and filed so far as was necessary answers admitting the allegations of the bills, a decree was entered foreclosing the three mortgages in suit and directing a sale of the property.

On February 27, 1897, the Louisville Trust Company filed a full intervening petition, verified by affidavit, setting forth the guarantee of the Kentucky bonds, its ownership of $125,000 of them, the decree of the Court of Appeals and the certiorari obtained from this court by the New Albany Company, the proceedings in the action instituted by John T. Mills, Jr., in respect to which it alleged that "the said J. T. Mills, Jr., claimed to be a creditor to the amount of $494,911.35, but did not disclose or discover to the court in his proceedings that he was not a general creditor, but he was at the time, if a creditor at all, secured with collateral securities, the value whereof is unknown to your petitioner. And your petitioner charges that the proceedings in behalf of the said John T. Mills, Jr., were procured by the said New Albany Company for the purpose of hindering and delaying the general or unsecured creditors of the said company in the enforcement of their debts; and that since the entry of the said order of appointment no step has been taken in the said cause, either to ascertain or to bring into court the assets, which are subject to the payment of the said debts, and no proceeding has been taken to notify or to bring before the court the said general or unsecured creditors." It then set forth the filing of the foreclosure bills, the entry of the decree of foreclosure, and alleged "that prior to the entry of the said decree the

holders of the bonds secured by the mortgages to the Farmers' Loan and Trust Company and the Central Trust-Company aforesaid, and the holders of the preferred and common stock of the said Louisville, New Albany and Chicago Railway Company, or a part thereof, had entered into an arrangement or agreement for the purpose of procuring the sale of the said property, its purchase by and in behalf of the parties entering into such combination and reorganization · thereof, and the issue of securities to the said parties, including said stockholders, without the payment of the debts and liabilities of the said company, and for the purpose of hindering and delaying the said creditors and with a view to prevent the collection or enforcement of such debts and liabilities; and that the said decree of sale was obtained by the said company and said complainants in order to carry out such unlawful purpose and to prevent the general or unsecured creditors of the said company from having an opportunity to be heard in matters arising in the said cause."

It also alleged that the New Albany Company was formed by consolidation, and that one of the consolidating companies was a corporation of Illinois and had its property in that State; that it had no power to enter into such consolidation, as had been decided by the Supreme Court of that State, and therefore that the mortgages executed by the New Albany Company and which were being foreclosed were not liens upon so much of its property as had belonged to the Illinois corporation and was situated in that State. It also claimed that under the provisions in the mortgages there had been no such default as justified a foreclosure, and prayed as follows:

" Wherefore, your petitioner prays that the decree of foreclosure and sale heretofore entered in this cause be set aside, that the pretended consolidations herein mentioned be adjudged void, and that the said mortgages before mentioned be declared to be invalid; that this cause be referred to a commissioner to ascertain and report what assets of the said New Albany Company are embraced by any liens, and what are not so included, and the amounts and descriptions thereof; and that, among other things, the master be directed to ascer-

tain what portion of the capital stock has not been paid for, and the amounts due thereon; and that the receiver herein be directed to take steps to enforce the collection of any amounts due to the said company; that due and proper advertisement be given for the proof of debts, and that said master be directed to ascertain and report the names of the creditors herein and the amounts of debts due to them; that it be adjudged that the said master ascertain what net earnings have accrued, and shall hereafter accrue, from the operation of the said railway in the hands of the receiver, and that the amount thereof be adjudged and declared to be a fund to be distributed among the general and unsecured creditors of the said company; and that all such other and further proceedings be had for the sale of the assets of the said company and the distribution thereof, according to law and the rights of the parties."

On the 9th of March, 1897, its petition was denied. On the 10th of March a sale was made by the master appointed therefor, and on the same day his report thereof was filed and the sale confirmed. An appeal was taken by the Louisville Trust Company to the Court of Appeals of the Seventh Circuit, which appeal was argued on the 16th day of November, 1897. On the 5th of January, 1898, the decree of the Circuit Court was affirmed. 56 U. S. App. 208. Whereupon application was made to this court, and the proceedings were brought before it by certiorari.

*Mr. Swagar Sherley* and *Mr. St. John Boyle* for the Louisville Trust Company.

*Mr. Adrian H. Joline* for the Louisville, New Albany and Chicago Railway Company. *Mr. Herbert B. Turner, Mr. George W. Kretzinger* and *Mr. E. C. Field* were on his brief.

Mr. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

The questions in this case are novel and important. They

arise on the foreclosure of certain railroad mortgages, and suggest to what extent the same rules and considerations obtain in them as in the foreclosures of ordinary mortgages upon real estate. It goes without saying that the proceeding in the foreclosure of an ordinary mortgage on real estate is simple and speedy. No one need be considered except the mortgagor and mortgagee, and if they concur in the disposition of the foreclosure it is sufficient, and the court may properly enter a decree in accordance therewith. Other parties, although claiming rights in antagonism to both or either mortgagor and mortgagee, may be considered outside the scope of the foreclosure, and whatever rights they may have may properly be relegated to independent suits.

But this court long since recognized the fact that in the present condition of things (and all judicial proceedings must be adjusted to facts as they are) other inquiries arise in railroad foreclosure proceedings accompanied by a receivership than the mere matter of the amount of the debt of the mortgagor to the mortgagee. We have held in a series of cases that the peculiar character and conditions of railroad property not only justify but compel a court entertaining foreclosure proceedings to give to certain limited unsecured claims a priority over the debts secured by the mortgage. It is needless to refer to the many cases in which this doctrine has been affirmed. It may be, and has often been said, that this ruling implies somewhat of a departure from the apparent priority of right secured by a contract obligation duly made and duly recorded, and yet this court, recognizing that a railroad is not simply private property, but also an instrument of public service, has ruled that the character of its business, and the public obligations which it assumes, justify a limited displacement of contract and recorded liens in behalf of temporary and unsecured creditors. These conclusions, while they to a certain extent ignored the positive promises of contract and recorded obligations, were enforced in obedience to equitable and public considerations. We refer to these matters not for the sake of reviewing those decisions, but to note the fact that foreclosure proceedings of mortgages covering ex-

tensive railroad properties are not necessarily conducted with the limitations that attend the foreclosures of ordinary real estate mortgages.

We notice, again, that railroad mortgages, or trust deeds, are ordinarily so large in amount that on foreclosure thereof only the mortgagees, or their representatives, can be considered as probable purchasers. While exceptional cases may occur, yet this is the rule, as shown by the actual facts of foreclosure proceedings, as well as one which might be expected from the value of the property and the amount of the mortgage.

We may not shut our eyes to any facts of common knowledge. We may not rightfully say that the contract of mortgage created certain rights, and that when those rights are established they must be sustained in the courts, and no inquiry can be had beyond those technical rights. We must, therefore, recognize the fact, for it is a fact of common knowledge, that, whatever the legal rights of the parties may be, ordinarily foreclosures of railroad mortgages mean not the destruction of all interest of the mortgagor and a transfer to the mortgagee alone of the full title, but that such proceedings are carried on in the interests of all parties who have any rights in the mortgaged property, whether as mortgagee, creditor or mortgagor. We do not stop to inquire, because the question is not presented by this record, whether a court is justified in permitting a foreclosure and sale which leaves any interest in the mortgagor, to wit, the railroad company and its stockholders, and ought not always to require an extinction of all the mortgagor's interest and a full transfer to the mortgagee, representing the bondholders. Assuming that foreclosure proceedings may be carried on to some extent at least in the interests and for the benefit of both mortgagee and mortgagor, (that is, bondholder and stockholder,) we observe that no such proceedings can be rightfully carried to consummation which recognize and preserve any interest in the stockholders without also recognizing and preserving the interests, not merely of the mortgagee, but of every creditor of the corporation. In other words, if the bondholder wishes to foreclose and exclude inferior lienholders or general unsecured creditors

and stockholders he may do so, but a foreclosure which attempts to preserve any interest or right of the mortgagor in the property after the sale must necessarily secure and preserve the prior rights of general creditors thereof. This is based upon the familiar rule that the stockholder's interest in the property is subordinate to the rights of creditors; first of secured and then of unsecured creditors. And any arrangement of the parties by which the subordinate rights and interests of the stockholders are attempted to be secured at the expense of the prior rights of either class of creditors comes within judicial denunciation.

Now, the intervening petition of the petitioner, duly verified, directly charged that the foreclosure proceedings were for the benefit alone of bondholder and stockholder and under an agreement between the two for a sale and purchase for both, and with a view of thereby excluding from any interest in the property all unsecured creditors; that this agreement was entered into after and in consequence of the decree of the United States Court of Appeals adjudging the New Albany Company liable on its guarantee. If that fact be true would it not be, and we quote the language of the Court of Appeals, "a travesty upon equity proceedings"? Can it be that when in a court of law the right of an unsecured creditor is judicially determined and that judicial determination carries with it a right superior to that of the mortgagor, the mortgagor and mortgagee can enter into an agreement by which through the form of equitable proceedings all the right of this unsecured creditor may be wiped out, and the interest of both mortgagor and mortgagee in the property preserved and continued? The question carries its own answer. Nothing of the kind can be tolerated.

Beyond the positive and verified statement of the petition of the Louisville Trust Company are many facts appearing in the record which strongly support this allegation. That a corporation whose stock consists of $16,000,000, $7,000,000 of which is preferred stock, all of which must be expected to be wiped out if a mortgage interest of $13,800,000 is fully asserted, hastens into court and confesses judgment on an alleged un-

secured liability; on the same day responds to an application for a receiver and assents thereto; makes no effort during the receivership to prevent default in interest obligations; tacitly, at least, consents to an order made on application of the receiver for the issue of $200,000 worth of receiver's certificates, in aid of betterments on the road, when the same sum might have paid the interest and delayed the foreclosure; when foreclosure bills are filed not only makes no denial, but admits all the averments of mortgage obligation and default — in other words, seems a debtor most willing to have all its property destroyed, and this because of one short wheat crop; these matters suggest, at least, that there is probable truth in the sworn averment of the petitioner that all was done by virtue of an agreement between mortgagee and mortgagor (bondholder and stockholder) to preserve the relative interests of both, and simply extinguish unsecured indebtedness. When, in addition to this fact, it appears that these proceedings are initiated within a few days after a decree of the Circuit Court of Appeals — a decree final unless brought to this court for review in its discretion by certiorari; that a large amount of unsecured indebtedness was by that decree cast upon the mortgagor, we cannot doubt that such a condition of things was presented to the trial court that it ought, in discharge of its obligations to all parties interested in the property, to have made inquiry and ascertained that no such purpose as was alleged in the intervening petition was to be consummated by the foreclosure proceedings.

It is said by the appellee that the Louisville Trust Company was dilatory, and that by reason thereof it was not entitled to consideration in a court of equity. There is some foundation for this contention, and yet there was not such delay as justified the court in refusing to enter upon an inquiry. Indeed, it does not appear that either the Circuit Court or the Circuit Court of Appeals considered the petitioner dilatory or denied its application on the ground of delay. It must be borne in mind that the bill of complaint filed on August 24 by one who had that day become, by consent of the defendant, a judgment creditor, was affirmatively "for the purpose of enforcing the

rights of complainant and all other creditors of said insolvent corporation according to their due equities and priorities," and to " decree the rights, liens and equities of each and all of the creditors of the said Louisville, New Albany and Chicago Railway Company as the same may be finally ascertained and decreed by the court upon the respective claims and interventions of several of such creditors or lienors in and to not only the said line of railroad appurtenances and equipment or any part of them, but also to and upon each and every portion of the assets and property of the said insolvent corporation."

Although this bill was filed in the avowed interest of himself and all other creditors, no action was taken to notify any creditors or to bring them into court to present their several claims. Any creditor might well have waited, even with knowledge of what had taken place, and after an examination of the bill thus filed, until publication or other notice. Whether this petitioner was, in fact, aware of these proceedings is not disclosed. Even if it were, its waiting a reasonable time for what in the ordinary course of procedure all creditors had a right to expect, is not a neglect which destroys its equities. It, and all other creditors, might justly assume that this proceeding was initiated in good faith to subject the property of the common debtor to the payment of all its debts; primarily it may be its secured debts, but also generally all its debts, secured or unsecured, and that whenever it was necessary due notice would be given and all creditors called upon to present their claims. It would not have been justified in treating this proceeding as solely in the interest of the mortgagee and mortgagor, the bondholder and stockholder, and for the purpose of destroying all claims of unsecured creditors.

It is true that the filing of the bills of foreclosure was notice of an intent to subject the property belonging to the mortgagor to the satisfaction of the mortgage. And for the purposes of the present inquiry it may be conceded that the intervening petition disclosed no legal defence to the claims of the mortgagees to foreclosure. In other words, for the inquiry we desire to pursue we shall assume without question that the matters referred to in the petition in respect to the prop-

erty in Illinois, the decision of the Supreme Court of that State and the effect of the attempted consolidation, and all other matters stated or suggested, separately or together, constitute no valid defence to the foreclosure bills. But this foreclosure proceeding did not either directly or by suggestion disclose any purpose to protect the mortgagor, the stockholder, at the expense of unsecured creditors. And, as heretofore stated, this unsecured creditor was not bound to presume that there was any such purpose in the minds of the two parties to the foreclosure. So that its failure to intervene at the first instant cannot be fatal delay or neglect.

It is also true that no evidence was offered by the petitioner in support of the allegations of its petition, but it is not true that in revising and reversing the final action of the Circuit Court we are acting on mere suspicion, or disturbing either settled rules or admitted rights. The allegations of this intervening petition as to the wrong intended and being consummated were specific and verified. The delay, under the circumstances, was not such as to deprive the petitioner of a right to be heard. The facts apparent on the face of the record were such as justified inquiry, and upon those facts, supported by the positive and verified allegations of the petitioner, it was the duty of the trial court to have stayed proceedings, and given time to produce evidence in support of the charges. Taking them as a whole, they are very suggestive, independent of positive allegation; so suggestive, at least, that, when a distinct and verified charge of wrong was made, the court should have investigated it.

We cannot shut our eyes to the fact that one claiming to be a general creditor for nearly half a million of dollars commences proceedings to establish his right, which, by the consent of the debtor, result on the very day in a judgment, execution and return thereof unsatisfied, a bill for a receivership and the appointment of a receiver; and yet notwithstanding this was initiated in support of this large claim, as well as for the protection of other unsecured creditors, shortly thereafter foreclosure proceedings are instituted and carried on to completion, which absolutely ignore the rights of this alleged

unsecured creditor, and leave as the result of the sale himself, the actor who has brought on the possibility of foreclosure, stripped of all rights in and to the mortgaged property. Was he a real creditor, and did that real creditor make a generous donation of this large claim? Were arrangements made with him and the stockholders to protect both, and by virtue of such arrangements was this foreclosure hastened to its close? Questions like these which lie on the surface of these proceedings cannot be put one side on the suggestion that they present only matter of suspicion.

It is no answer to these objections to say that a bondholder may foreclose in his own separate interest, and, after acquiring title to the mortgaged property, may give what interest he pleases to any one, whether stockholder or not, and so these several mortgagees foreclosing their mortgages, if proceeding in their own interest, if acquiring title for themselves alone, may donate what interest in the property acquired by foreclosure they desire. But human nature is something whose action can never be ignored in the courts, and parties who have acquired full and absolute title to property are not as a rule donating any interest therein to strangers. It is one thing for a bondholder who has acquired absolute title by foreclosure to mortgaged property to thereafter give of his interest to others, and an entirely different thing whether such bondholder, to destroy the interest of all unsecured creditors, to secure a waiver of all objections on the part of the stockholder and consummate speedily the foreclosure, may proffer to him an interest in the property after the foreclosure. The former may be beyond the power of the courts to inquire into or condemn. The latter is something which on the face of it deserves the condemnation of every court, and should never be aided by any decree or order thereof. It involves an offer, a temptation, to the mortgagor, the purchase price thereof to be paid, not by the mortgagee, but in fact by the unsecured creditor.

We may observe that a court, assuming in foreclosure proceedings the charge of railroad property by a receiver, can never rightfully become the mere silent registrar of the agree-

ments of mortgagee and mortgagor.  It cannot say that a foreclosure is a purely technical matter between the mortgagee and mortgagor, and so enter any order or decree to which the two parties assent without further inquiry.  No such receivership can be initiated and carried on unless absolutely subject to the independent judgment of the court appointing the receiver; and that court in the administration of such receivership is not limited simply to inquiry as to the rights of mortgagee and mortgagor, bondholder and stockholder, but considering the public interests in the property, the peculiar circumstances which attend large railroad mortgages, must see to it that all equitable rights in or connected with the property are secured.

While not intending any displacement of the ordinary rules or rights of mortgagor and mortgagee in a foreclosure, we believe that under the circumstances as presented by this record there was error; that the charge alleged positively, and supported by many circumstances, of collusion between the bondholder and the stockholder, to prevent any beneficial result inuring by virtue of the decree of the Circuit Court of Appeals for the Sixth Circuit in reference to the guarantee obligations of the New Albany Company, was one compelling investigation, and the order will, therefore, be that the decrees of the Circuit Court and of the Circuit Court of Appeals be reversed and the case be remanded to the Circuit Court, with instructions to set aside the confirmation of sale; to inquire whether it is true as alleged that the foreclosure proceedings were made in pursuance of an agreement between the bondholder and stockholder to preserve the rights of both and destroy the interests of unsecured creditors; and that if it shall appear that such was the agreement between these parties, to refuse to permit the confirmation of sale until the interests of unsecured creditors have been preserved, and to take such other and further proceedings as shall be in conformity to law.

*Decree accordingly.*

Mr. Justice Peckham dissented.