## WENGER et al. v. CHICAGO & E. R. CO.

(Circuit Court of Appeals, Seventh Circuit. January 21, 1902.)

### No. 753.

1. RAILROADS—REORGANIZATION—INVALIDITY FOR FRAUD AS AGAINST CREDITORS.
   The sale of railroad property in foreclosure proceedings to a committee of reorganization, by whose plan the stockholders of the mortgagor appear to obtain some benefit in the purchasing company, is open to the closest scrutiny where general creditors of the mortgagor are left unprovided for; but where the foreclosure is instituted and carried on in the ordinary course for the honest purpose only of enforcing the rights of the bondholders against the property, the mere fact that stockholders of the old company may, under the purchasing arrangement, be given some interest in the securities of the new in exchange for their stock, while it may be indicative of fraud, does not render the sale fraudulent per se, and a general creditor of the old company cannot successfully attack such sale without showing actual fraud, and that property of such company, exceeding in value the mortgage debt, has, by reason of such fraud, been placed beyond his reach on execution.

2. SAME—SUIT TO CHARGE PROPERTY—PARTIES.
   To a suit in equity by a creditor of a railroad company to enforce his claim against the property of such company, which has been sold in foreclosure proceedings, and passed into the hands of a reorganized company, on the ground that such sale and purchase were fraudulent, a corporation which owns all the stock of the new company and the trustee for its bondholders are both necessary parties, and a bill which neither joins them as parties nor shows that they cannot be made defendants is demurrable.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

The bill was originally filed by appellants, citizens of Illinois against appellee, a corporation, organized under the laws of the State of Indiana, in the Circuit Court of Cook County, in the State of Illinois, and was by appellee removed to the Circuit Court of the United States for the Northern District of Illinois, Northern Division, on account of diversity of citizenship.

Thereupon, an amended bill was filed. To this, appellee demurred, and the demurrer having been sustained by the Court below (105 Fed. 796) this appeal is prosecuted.

W. E. Griffin, for appellants.
F. L. Brooks, for appellee.

Before JENKINS and GROSSCUP, Circuit Judges, and BUNN, District Judge.

GROSSCUP, Circuit Judge. It is not necessary to set out the bill at large. In substance, so far as is material to the questions involved, it avers that prior to, and on the 10th of June, 1888, the Chicago & Atlantic Ry. Co., a corporation of the States of Ohio, Indiana and Illinois, owned and operated the line of road from Marion, Ohio, to Chicago, Illinois, that subsequently passed by foreclosure sale to the appellee; that appellant Wenger, a passenger on one of the trains operated by said Chicago & Atlantic Ry. Co., sustained through the negligence of the said company permanent injuries, resulting in the loss of his leg, on account of which, on April 4, 1889, a suit at law was instituted in the Superior Court of Cook County against the railway company to recover damages; that the appearance of the railway company was entered therein May 7, 1889, and the plea of the general issue filed; that said cause coming on to be heard October 4, 1893, resulted in a verdict in favor of Wenger for the sum of twenty-five thousand dollars, upon which judgment was subsequently entered against the railway company; that execution has been sued out upon such judgment against the Chicago & Atlantic Ry. Co. and returned unsatisfied, with the certificate of the sheriff of Cook County thereon that he could find no property whereon to make his levy; and that the said judgment, together with interest thereon, still remains in full force and effect. By proper articles of assignment and for a valuable consideration, appellant McShane has acquired an interest in the judgment.

The bill further shows that prior to the happening of any of the foregoing events, the Chicago & Atlantic Ry. Co. had executed its mortgage, or deed of trust, upon all its railway property and franchises, then owned or thereafter to be acquired, to secure six million five hundred thousand dollars first mortgage bonds; and subsequently, but prior to the injury to appellant Wenger, a second mortgage, or deed of trust, to secure its second mortgage bonds, to the extent of five million dollars.

The bill further shows that the New York, Lake Erie & Western Ry. Co., a corporation, owning and operating a line of railroad from New York to Marion, Ohio, and running in connection with the Chicago & Atlantic Ry. Co., had at the time of the execution of the first mortgage bonds guarantied the payment of the interest thereof; and that the said company was, from the beginning, the holders for value of the entire issue of second mortgage bonds; that default having been made in the payment of interest on the second mortgage bonds, and in certain installments of interest on the first mortgage bonds—upon which default the New York, Lake Erie & Western Ry. Co. had advanced, as guarantor, several hundred thousand dollars—foreclosure proceedings were instituted in 1886, in the Circuit Court of the United States for the District of Indiana; that such foreclosure suit having gone to a decree, there

was, under the order of the court, a sale by a master of the court of the property and franchises of said railway company, August 13, 1890, to Charles H. Koster and Anthony J. Thomas, representing a re-organization committee, by whom the said property was conveyed to the appellee in pursuance of the re-organization plan.

The plan of re-organization, as set forth in the exhibit to the bill, appears to be substantially as follows: The re-organized company to issue twelve million dollars first mortgage bonds in place of the six million five hundred thousand dollars first mortgage bonds foreclosed, distributable as follows: (a) Six million eight hundred and twenty-five thousand dollars in exchange for the six million five hundred thousand dollars, being at the rate of one thousand and fifty dollars of the new first mortgage bonds for each thousand dollars of the then existing mortgage bonds; (b) two million dollars to be used in settlement of debts due to the New York, Lake Erie & Western Ry. Co. and to the New York, Pennsylvania & Ohio Ry. Co., upon their surrender of coupons held, and presumably paid, by them as guarantors of the first mortgage bonds, and holders of the second mortgage bonds; (c) seven hundred thousand dollars to be used in acquiring outstanding second mortgage bonds, other than those claimed by the New York, Lake Erie & Western Ry. Co., at the rate of four hundred dollars new bonds for each ten thousand dollars of the old; and (d) such amount of first mortgage bonds as are necessary to pay the expenses of the foreclosure; the remaining two million, or more, to be used from time to time by the appellee for betterments and improvements.

The plan contemplated also the issue of ten million dollars five per cent. non-accumulative income bonds, secured by second mortgage, distributable as follows: (a) Four million dollars in exchange for the capital stock of the Chicago & Atlantic Ry. Co. at the rate of forty dollars in bonds for each share (one hundred dollars) of stock; and (b) five million dollars to the New York, Lake Erie & Western Ry. Co. as part consideration for its guaranty of the interest of the new first mortgage bonds. The plan provided also that the new capital stock, ten million dollars, should be issued to the New York, Lake Erie & Western Ry. Co. as part consideration for the foregoing guarantee. The re-organization was open, under this plan, to all the bond holders and stock-holders of the Chicago & Atlantic Ry. Co. who should come into the plan within a certain time limited.

Appellants contend, chiefly upon the authority of Louisville Trust Co. v. Louisville, N. A. & C. Ry. Co., 174 U. S. 675, 19 Sup. Ct. 827, 43 L. Ed. 1130, that, owing to the foregoing provision in favor of the stockholders of the old road, the foreclosure sale to the Chicago & Erie Ry. Co. is fraudulent per se, and that appellants are, on that state of the case, entitled to assert their subsequently acquired judgment lien, as if the foreclosure sale had not intervened. This contention can be based solely upon the fact that the plan of re-organization included in its beneficial provisions the stock-holders of the mortgagor company, as persons who should, by reason solely of their holding such stock, have an interest in the second mortgage

income bonds of the proposed purchasing company, in the ratio of forty dollars of new bonds to one hundred dollars of the old stock.

Unquestionably, the sale of a railroad property under foreclosure proceedings to a committee of re-organization, according to whose plan the stock-holders of the mortgagor company appear to obtain some benefit in the purchasing company, is open to the closest scrutiny. While in the distribution of assets, the mortgage bond holders come first in their claim upon the railway property as security, general creditors, and especially those having reduced their claims to judgment, have a place that attaches to the property before the equity of the share-holders of the mortgagor company; and courts of equity will not permit themselves to be used as instruments to unfairly eliminate this intervening interest in favor of the share-holders. A foreclosure, in pursuance of such a scheme, while colorably legal, is in conscience and equity indefensible, and, in a proper action, is open to attack and correction. It was the possible presence of just such a purpose and result that led the Supreme Court (in Louisville Trust Co. v. Louisville, N. A. & C. Ry. Co., supra) to the decree entered in that case.

But where, in ordinary course, foreclosure is instituted and carried out for the honest purpose only of enforcing, against the property, the mortgage obligation, the mere fact that share-holders of the old company may, under a purchasing arrangement, become interested in the securities of the new, will not make the foreclosure per se fraudulent. Such fact may be indicative of fraud, but is not a fraud per se. We see no reason why the purchaser for reorganization may not include any one whom he chooses to take into the organization, and may not contemplate even an exchange of some of the new securities for outstanding shares. To the extent that the property is worth something more than the mortgages, the general creditors are interested in any subsequent distribution. But beyond that, their interest does not extend.

In the case under consideration no showing of fraud of such nature is averred. It is plain from the bill that the interest on the first mortgage bonds had remained unpaid for a considerable period, and that no interest whatever had been paid upon the second mortgage bonds. There is no averment in the bill relating to earnings, or to the actual value of the road, or that such value and earnings were adequate to meet the mortgage obligations. So far as the bill discloses, it was a case of necessary foreclosure, in the interest of the mortgage bond holders; and in the nature of the case there remained nothing for the general creditors. Hence, there was no actual fraud upon such creditors.

The distribution of the securities of the new company under the re-organization plan carry out this view. The new first mortgage bonds—twelve million dollars—secured by no property other than that of the defaulting mortgagor company exceeded the combined first and second mortgage bond issue of the old company. Their increased value they obtained through the foreclosure was not by reason of added mortgaged property, but solely because, in the new arrangement, they were guaranteed by the New York, Lake Erie

& Western Ry. Co. In the distribution of these bonds—the equivalent of the old bond issue—the stock-holders of the old company obtained nothing. The foreclosure, therefore, was of no benefit to them, except to the extent that the intervention of the New York, Lake Erie & Western Ry. Co., as a guarantor of the new first mortgage bonds, and as owner of the new stock should, in the future adjustments of railway business, make the new income bonds valuable. But, general creditors of the old company had no intrinsic right to share in any such new value; and, having no such right, cannot object that the new owner may include beneficially in the new organization the share-holders of the old company. The question raised by the bill is not: Will the new company with its new railway connections make the income bonds valuable. The sole question is: Had the railway property, as it existed at the time of foreclosure, a value greater than the mortgage indebtedness. And that such value existed is not averred.

It seems clear, therefore, that the averments of the bill make no such case of fraud as would render the foreclosure sale void. But we need not rest our decision here. In any state of the case, the impeachment of the decree must be for actual, and not merely for constructive fraud; and a bill to set aside a decree for actual fraud is demurrable, unless all the parties interested in the controversy are brought before the court, or their absence satisfactorily accounted for. The purchaser at the sale attacked—the Chicago & Erie R. R. Co.—is not a defendant. It certainly has a substantial interest in the controversy.

The owners of the new stock—the New York, Lake Erie & Western Ry. Co.—is not a party. The decree prayed for would burden the property represented by this stock with a debt not contemplated when the stock was issued.

The trustee, or other representative of the new first mortgage bonds, is not here. Indisputably, the holders of these bonds are interested in a project that would reduce by nearly one-half their issue of bonds from a place as first mortgage bonds to a place second to appellants' judgment.

It is not averred that these parties, or any of them, are without the jurisdiction of the Court, or that they could not be made defendants without defeating the jurisdiction of the Court. No explanation, indeed, for their absence is attempted.

On the whole case we think the decree of the Circuit Court should be affirmed.