KINGSTON v. AMERICAN CAR & FOUNDRY CO. et al.

No. 9013.

Circuit Court of Appeals, Eighth Circuit.

Jan. 7, 1932.

Hugo Monnig, Jr., of St. Louis, Mo. (Daniel G. Taylor, Jacob Chasnoff, and George C. Willson, all of St. Louis, Mo., on the brief), for appellant.

Charles J. Hardy, of New York City (William R. Gentry, of St. Louis, Mo., and Noah A. Stancliffe, of New York City, on the brief), for appellees.

Before VAN VALKENBURGH, BOOTH, and GARDNER, Circuit Judges.

GARDNER, Circuit Judge.

This is a suit in equity brought by appellant as plaintiff below, against the American Car & Foundry Company, a corporation, and Carter Carburetor Corporation, a corpora-

tion, as defendants. The parties will be referred to as they appeared in the lower court.

It is alleged in the bill of complaint that prior to February 17, 1920, plaintiff, with one W. H. Woodin and one Hugh H. C. Weed, were the owners of all the capital stock of the Carter Carburetor Company, a Missouri corporation (not defendant Carter Carburetor Corporation); that on or about that date five other individuals acquired from these stockholders 250 shares of the stock of that company to indemnify them against liability on account of indorsing certain notes of the company, enabling it to borrow needed funds. These individuals are referred to in the record as the syndicate. This company became financially embarrassed and was adjudged a bankrupt on September 28, 1921, and members of the syndicate were required to pay the notes of the company which they had indorsed, amounting to some $80,000. In this situation, and while the bankruptcy proceedings were pending, plaintiff agreed with his former associates, Woodin and Weed, to endeavor to acquire the assets of the bankrupt and reorganize the company. That plaintiff, with the consent of these associates, Woodin and Weed, entered into an agreement with the syndicate that the syndicate should purchase certain patents, trademarks, and assets of the bankrupt and certain assets which were owned by Wagner Electric Company, useful in conducting the carburetor business, provided such property could be bought upon a reasonable basis; and that plaintiff and his former associates would then take over, or cause to be taken over, the property, reimburse the syndicate for the amount of cash paid by it for the property, and in addition would work out a plan of reorganization of the company, whereby the syndicate, if the venture were successful, would be repaid the $80,000 advanced by its members; that it was agreed between plaintiff and his said associates, Woodin and Weed, that the net profits resulting from the acquisition of this property and the reorganization of said business, in excess of that necessary to reimburse the syndicate, would be equally shared by plaintiff and his associates, Woodin and Weed. That on January 11, 1922, the trustee in bankruptcy sold all of the assets of the bankrupt at public sale to the syndicate, but title thereto was taken temporarily in the name of a corporation known as Carter Manufacturing Company. That prior to the acquisition of this property by the syndicate, plaintiff, on behalf of himself and his former associates, entered into an agreement with the defendant American Car

& Foundry Company whereby (1) that company agreed to purchase and take over from the syndicate all the physical assets, not including patents and trade-marks, of the Carter Manufacturing Company, for the amount paid by the syndicate; (2) that the American Car & Foundry Company would pay to certain employees of the bankrupt certain sums as compensation for their time lost in waiting for the reorganization of the business; and (3) that it would cause a new corporation to be formed, to which the patents and trade-marks should be conveyed, and which corporation would enter into an exclusive contract with the American Car & Foundry Company for the manufacture by that company of all carburetors manufactured under said patents, and that this new corporation should engage in the business of selling the carburetors, and provide the necessary engineering and servicing that might be required, which corporation's common stock should be delivered to Woodin, Weed, and the plaintiff in equal parts, and that it should have a callable preferred stock of $80,000 which should be delivered to said syndicate. It is then alleged that pursuant to this agreement the physical properties formerly owned by the bankrupt, together with certain property purchased by the syndicate from Wagner Electric Company, were sold and conveyed to the American Car & Foundry Company, while the patents and trade-marks formerly belonging to the bankrupt were conveyed and assigned to Weed, to be by him held for the benefit of said proposed corporation; that Weed thereafter executed a conveyance of these patents and trade-marks with the name of the grantee in blank and delivered the same to the law firm of Hardy, Stancliffe & Whitaker of New York City, the then general counsel for the American Car & Foundry Company; the delivery being for the purpose of enabling the transfer of said patents to be made to the proposed corporation when formed. That thereafter the American Car & Foundry Company began the manufacture of Carter carburetors and carried on the sale of these carburetors, though no new corporation was actually formed until July, 1925; that while plaintiff knew that no corporation had been formed and that the business was being conducted by the foundry company, he believed it was the intention of that company to carry on the business until the proposed corporation should be formed, and he further believed that upon the formation of such corporation he would be given one-third of the profits of such enterprise, after paying the American Car & Foundry Company its prof-

its in connection with the manufacture of carburetors, and after reimbursing the members of the syndicate for the $80,000 advanced by them.

It is further alleged that on or about the 31st day of July, 1925, in violation of the plan and agreement which plaintiff alleges he had with his associates, and with the knowledge of the American Car & Foundry Company that its action was without the approval and consent of the plaintiff, said company caused a corporation known as the Carter Carburetor Corporation (the defendant in this action) to be organized with an authorized capital of 1,700 shares of six per cent. class A preferred stock of the par value of $100 each, 2,300 shares of class B preferred stock without par value but redeemable at $100 per share, and 500 shares of common stock without par value; and on the 30th of September, 1925, the American Car & Foundry Company caused all of the 1,700 shares class A preferred stock, 1,500 shares of the class B preferred stock, and 500 shares of common stock to be issued to itself, and that it still claims to own said shares. That the American Car & Foundry Company caused 800 shares of class B stock to be issued to the syndicate, and that on the organization of the defendant Carter Carburetor Corporation, the American Car & Foundry Company caused all the assets formerly belonging to the bankrupt and including the property assigned in blank to Weed, and the property acquired by the syndicate from the Wagner Electric Company, to be transferred to the defendant Carter Carburetor Corporation without the knowledge of the plaintiff, "thereby appropriating to itself the property belonging to this plaintiff and his associates, with knowledge of plaintiff's various agreements with his former associates." That by thus appropriating to its own use and mingling the property of the plaintiff with its own, and by issuing the stock of the new company to itself and operating the business of said company wholly for its own benefit "instead of entering into a contract with said proposed corporation to manufacture said carburetors for it said defendant American Car & Foundry Company has made it impossible to carry out said original plan without doing great damage to said Syndicate and to this plaintiff."

It is then alleged that plaintiff adopts the plan of reorganization as carried out, in so far as it has issued preferred stock to itself and said syndicate, and in all other respects "excepting as to the issuance of said common

stock, one-third of which belonged to and should be issued to this plaintiff." Plaintiff prays that the defendants be enjoined from paying any dividends on the common stock, unless it pay one-third of such dividends to him; that he be decreed to be the owner of one-third of said common stock; and that defendants cause their proper officers to issue to plaintiff a certificate of stock evidencing his ownership.

The answer, while admitting many allegations of the complaint, may be said to put at issue all those allegations which were material to plaintiff's cause of action.

■ Plaintiff, as a witness in his own behalf, supported the allegations of his bill of complaint. During all the times mentioned, and until December, 1925, plaintiff was an active vice president of the defendant American Car & Foundry Company, while he, Woodin, and Weed were the owners of all the stock of the Carter Carburetor Company, except possibly 250 shares held by the syndicate. Woodin during all the times mentioned was a director and the president of the American Car & Foundry Company, as well as chairman of its executive committee. The alleged arrangements for the so-called reorganization of the Carter Carburetor Company, in so far as they affected the defendants, are charged to have been had through Woodin. Woodin, however, categorically and positively denied that he ever made any such arrangements as is claimed by the plaintiff, and the court found as a fact that no such arrangements or agreements had been made. This finding is presumptively correct. No serious mistake of fact has been pointed out by the plaintiff on this appeal. It is sustained by ample evidence, and must therefore be permitted to stand. Quinn v. Union National Bank (C. C. A.) 32 F.(2d) 762; Treat v. Rogers (C. C. A.) 35 F.(2d) 77; Southwest Pipe Line Co. v. Empire Natural Gas Co. (C. C. A.) 33 F.(2d) 248, 64 A. L. R. 1229.

■ The plan for the reorganization of the Carter Carburetor Company, as alleged in the complaint, involved two arrangements or agreements. The first contemplated securing title and possession of the assets of the bankrupt at a small fraction of their value for the benefit of plaintiff and his associate stockholders and certain of its selected creditors, to the exclusion of other of its creditors. The purpose of the plaintiff as declared in the complaint was to "enable plaintiff and his associates to make a large profit." The second arrangement was that by which the American Car & Foundry Company, acting through one of its directors who was also its president and chairman of its executive committee, was to take over these assets at the price at which they had been secured, and then organize a new corporation, transferring these assets to it and apportioning the common stock, one-third to plaintiff, one-third to Woodin, and one-third to Weed. This confessedly was for the benefit of plaintiff, Woodin, and Weed. The assets of the bankrupt, according to the testimony of the plaintiff, were worth about $175,000, while the bankrupt owed debts of about $150,000. Through plaintiff's manipulations or plans of reorganization, according to his testimony, these assets were bought for $22,000. The whole purpose of the scheme of reorganization was to make a secret profit for the plaintiff and his associates, the owners of the stock of the bankrupt. The first of these arrangements had to do with the securing of the assets of the old company. These assets were subject to sale pursuant to order of court. If the so-called arrangement meant anything, it must have meant that the parties were to use their best efforts to secure these assets at as low a price as possible. By so doing, they, of course, deprived the creditors of the company of a right which they had to have the assets sold at the highest price obtainable to apply on their claims. By the second arrangement or agreement, Woodin, the controlling officer of the American Car & Foundry Company, was to use that company in the interest of himself, the plaintiff, and Weed, and against the interest of the American Car & Foundry Company, to carry out this plan of reorganization.

■ Not only do we think the lower court properly held that the plaintiff had not sustained the burden of proving these agreements and arrangements, but, had they been proven as alleged, plaintiff could not, in a court of equity, assert any rights arising therefrom. He does not come into court with clean hands. These arrangements contemplated a fraud upon the creditors of the Carter Carburetor Company and a fraud upon the defendant American Car & Foundry Company, and they could not be tolerated in a court of equity. They were without valid consideration and were contrary to good morals. Louisville Trust Co. v. Louisville, etc., Ry. Co., 174 U. S. 674, 19 S. Ct. 827, 43 L. Ed. 1130; Northern Pacific Ry. Co. v. Boyd, 228 U. S. 482, 33 S. Ct. 554, 57 L. Ed. 931; Kansas City Terminal Ry. Co. v. Central Union Trust Co., 271 U. S. 445, 46 S. Ct. 549, 551, 70 L. Ed. 1028.

In Kansas City Terminal Ry. Co. v. Central Union Trust Co., supra, in an opinion by Mr. Justice McReynolds, it is said:

"'And any arrangement of the parties by which the subordinate rights and interests of the stockholders are attempted to be secured at the expense of the prior rights of either class of creditors comes within judicial denunciation.' Louisville Trust Co. v. Louisville Railway Co., 174 U. S. 683, 684, 19 S. Ct. 827, 43 L. Ed. 1130.

"This doctrine is the 'fixed principle' according to which Northern Pacific Railway Co. v. Boyd, 228 U. S. p. 507, 33 S. Ct. 554, 57 L. Ed. 931, declares the character of reorganization agreements must be determined, and to it there should be rigid adherence."

█ If, as viewed by the lower court, this suit is one for specific performance of a contract, then plaintiff had no standing in court, because manifestly the so-called arrangement could not be enforced at least as against the defendant American Car & Foundry Company. That company as a corporation took no action on any such arrangement or agreement, and the only claim of the plaintiff is that his arrangement was with Woodin, who, if plaintiff is to be believed, was contracting on behalf of his corporation in the interest of himself and his associates, and against the interest of his company. Specific performance of a contract cannot be demanded as a matter of right, but is addressed to the discretion of a court of equity, and certainly there is nothing about these arrangements or contracts to appeal to the conscience of the chancellor. Wardell v. Railroad Co., 103 U. S. 651, 26 L. Ed. 509; Pope v. Gormully, 144 U. S. 224, 12 S. Ct. 632, 36 L. Ed. 414. But even if the suit be viewed as one seeking to impress a trust upon the property, on the theory that it was taken by the defendant American Car & Foundry Company with knowledge of plaintiff's alleged contract interest therein, still the claims of plaintiff are such as to preclude a court of equity from granting relief.

This suit was originally brought in the state court and removed to the federal court. The plaintiff made a motion to remand on the ground that the defendants had not filed in the lower court their demurrer, plea, or answer within thirty days after the transcript was filed. This motion was overruled, and the plaintiff assigns this action of the court as error. It is conceded that defendants complied with all the provisions of the statute relative to the removal of the case from the state court to the federal court up to and including the filing of their transcript on removal in the district court, and that the suit was a removable one. They, however, filed no pleading within thirty days after the filing of the transcript. After the expiration of thirty days from the filing of the transcript, and before any pleading had been filed by defendants, plaintiff interposed his motion to remand, basing it solely upon the ground that defendants had failed to complete the removal, in that they had failed to plead, answer, or demur within thirty days after entering and filing the transcript.

Section 28 of the Judicial Code, being section 71, title 28, USCA, enumerates the causes which may be removed from the state to the federal court. Section 29 of the Judicial Code, being section 72, title 28, USCA, prescribes the procedure for removal. This section provides that the party desiring to remove shall make and file with his verified petition, and bond for entering in the district court within thirty days from the date of filing his petition, a certified copy of the record, written notice thereof to be given the adverse party, and, "The said copy being entered within said thirty days as aforesaid in said district court of the United States, the parties so removing the said cause shall, within thirty days thereafter, plead, answer, or demur to the declaration or complaint in said cause, and the cause shall then proceed in the same manner as if it had been originally commenced in the said district court."

██ A removal from a state court to the federal court is analogous to a change of venue. On filing of sufficient petition and bond in a removable case, the jurisdiction of the state court absolutely ceases, and the jurisdiction of the federal court at once attaches. It is not even necessary that an order of removal be secured from the state court. Marshall v. Holmes, 141 U. S. 589, 12 S. Ct. 62, 35 L. Ed. 870; Madisonville Traction Co. v. Saint Bernard Mining Co., 196 U. S. 239, 25 S. Ct. 251, 49 L. Ed. 462; Anderson v. United Realty Co., 222 U. S. 164, 32 S. Ct. 50, 56 L. Ed. 144; Manning v. Amy, 140 U. S. 137, 11 S. Ct. 707, 35 L. Ed. 386.

██ It has been held that the filing of the transcript in the federal court is necessary to enable that court to proceed with the cause, but not for the transfer of jurisdiction. If plaintiff's contention be accepted, then the filing of the removal papers would amount to nothing more than a declaration on behalf

of defendants that they intended to effect a removal of the case, and jurisdiction would remain in the state court until the last act necessary to effect that removal, to wit, the filing of a plea, answer, or demurrer, was taken. This, we think, cannot be accepted as the condition of the law at the present time. As we have already stated, the filing of the proper petition and bond for removal in a removable case at once divests the state court of jurisdiction, and vests jurisdiction in the federal court. True, it may require some further acts in federal court before that court can, under the procedure prescribed, properly exercise that jurisdiction; to wit, transcript must be filed and defendant must file some pleading. But this goes to the matter of procedure and not to the jurisdiction. The statute, fixing the time within which the defendant must plead, makes definite the procedure in that regard. Without such provision, it might well transpire that serious doubts or complications would arise. Under the state practice, the defendant is quite generally given a period of twenty or thirty days in which to plead. Under the removal statute, he may at any time before the lapse of the time required by the laws of the state, or the rule of the state court in which the suit is brought, to answer or plead to the declaration or complaint, file his petition and bond for removal. His removal bond requires him to file his transcript in the federal court within thirty days. If, under the state practice, a defendant had thirty days in which to plead, and on the twenty-fifth day filed his petition and bond for removal, with proper notice, the transcript might not be filed in the federal court until thirty days from that time. Under the state practice, in the case assumed the defendant would be in default for want of answer or demurrer before the time of filing the transcript expired. We may assume that, up to the time of the filing of the transcript, there is no record whatever in the federal court. Pleadings, under the federal practice, are filed and not necessarily served. There being no record of such case in the federal court, it would give rise to confusion, at least if the defendant should be required to file a pleading in a case in which the record had not yet been received in that court. To avoid such confusion and make the proceeding clear as well as uniform, the statute was amended so as to permit and likewise require the defendant to answer within thirty days after the filing of the transcript. This view is in accord with that expressed by Judge McDermott in

Brown v. Empire Gas & Fuel Co. (D. C.) 26 F.(2d) 100, cited with approval in Kidd v. National Fire Ins. Co. (D. C.) 32 F.(2d) 935.

We put aside as unnecessary for consideration the contention of appellee that the plaintiff has acquiesced in the correctness of the decision of the court below in denying his motion, by having indorsed upon the amended answer the recital, "The above answer received and objections to time waived," and the further fact that he replied thereto.

Plaintiff's motion to remand was properly denied. The judgment appealed from is therefore affirmed.