In re **RUDY DEBRUYCKER RANCH, INC. and Rudy and Rosmary Debruycker, Debtors.**

**Bankruptcy No. 86–40542.**

United States Bankruptcy Court, D. Montana.

March 18, 1988.

Jerome Shulkins, Seattle, Wash., Neal Jensen, Great Falls, Mont., for debtors.

Art Graham, Missoula, Mont., for Federal Land Bank of Spokane.

John Paul, Great Falls, Mont., for Interstate PCA.

Virgil Gamradt, Fairfield, Mont., Dan McKay, Great Falls, Mont., for Merle Debruycker.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this Chapter 11 case, hearing on the Debtor's Chapter 11 Plan of Reorganization was held on December 11, 1987, together with objections to the Plan filed by Interstate Production Credit Association (PCA). Ballots to the Plan are as follows:

| Class | Creditor | Amount | Vote |
| --- | --- | --- | --- |
| 2—secured | Federal Land Bank (FLB) | $606,876.08 | Rejects |
| 3—secured | PCA | 890,712.41 | Rejects |
| 2(d)—secured | Gamradt | 59,767.61 | Accepts |
| 2(e)—secured | Merle Debruycker | Non stated | Rejects |

Gamradt is impaired under the Plan, so that at least one class of impaired creditors has affirmatively voted in favor of the Plan in order to satisfy § 1129(a)(10) of the Code. Following the hearing the Debtor proposed amendments to the Plan which modified the liquidation analysis, changed the valuations of the property, set forth income and expense projections in line with the testimony produced at the hearing, and reamortized FLB's claim over a straight 30 years. The Plan proposes that unsecured creditors will be paid about 41% of their claims, after an initial payment of $100,-000.00. FLB is an undersecured creditor, having a secured claim of $374,880.00. Substantial variance in appraisal testimony has been submitted as to the personal property of the Debtor, which is unencumbered.

As to the valuation of the personal property, I conclude the valuation of $260,-000.00 represents fair market value based on the appraisal of Frank Bass, an experienced farm auctioneer residing in the area of the Debtor's farm. The appraisals presented by PCA were erroneous and incomplete as to John Deere combines due to lack of sale experience of such combines by each appraiser. Such appraisal testimony was therefore not credible.

The crux of the issues presented by the various objections can be resolved by a determination of the absolute priority rule under the fair and equitable test in § 1129(b)(2)(B)(ii). The Debtor seeks the Court to apply the rule set forth in *In re Ahlers*, 794 F.2d 388 (8th Cir.1986). That decision has now been reversed by the United States Supreme Court, —— U.S. ——, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988), where the Court held:

"As the Court of Appeals stated, the absolute priority rule 'provides that a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property [under a reorganization] plan.' Id., at 401. The rule had its genesis in judicial construction of the undefined requirement of the early bankruptcy statute that reorganization plans be 'fair and equitable.' See *Northern Pacific R. Co. v. Boyd*, 228 U.S. 482, 504–505 [33 S.Ct. 554, 560, 57 L.Ed. 931] (1913); *Louisville Trust Co. v. Louisville, N.A. & C.R. Co.*, 174 U.S. 674, 684 [19 S.Ct. 827, 830, 43 L.Ed. 1130] (1899). The rule has since gained express statutory force, and was incorporated into Chapter 11 of the Bankruptcy Code adopted in 1978. See 11 U.S.C. § 1129(b)(2)(B)(ii) (1982 ed., Supp.IV). Under current law no Chapter 11 reorganization plan can be confirmed over the creditors' legitimate objections (absent certain conditions not relevant here) if it fails to comply with the absolute priority rule.

There is little doubt that a reorganization plan in which respondents retain an equity interest in the farm is contrary to the absolute priority rule. The Court of Appeals did not suggest otherwise in ruling for respondents, but found that such a plan could be confirmed over petitioners' objections because of an 'exception' or 'modification' to the absolute priority rule recognized in this Court's cases.

The Court of Appeals relied on the following dicta in *Case v. Los Angeles*

*Lumber Products Co.,* supra [308 U.S. 106] at 121–122 [60 S.Ct. 1, 10–11, 84 L.Ed. 110]:

'It is, of course, clear that there are circumstances under which stockholders may participate in a plan of reorganization of an insolvent debtor ...'

'We believe that to accord the creditor of his full right of priority against the corporate assets' where the debtor is insolvent, the stockholder's participation must be based on a contribution in money or money's worth, reasonably equivalent in view of all the circumstances to the participation of the stockholders.'

The Court of Appeals found this language applicable to this case, concluding that respondents' future contributions of 'labor, experience, and expertise' in running the farm—because they have 'value' and are 'measurable'—are 'money or money's worth' within the meaning of *Los Angeles Lumber,* 794 F.2d at 402. We disagree.

The United States, as amicus curiae, urges us to reverse the Court of Appeals ruling and hold that codification of the absolute priority rule has eliminated any 'exception' to that rule suggested by *Los Angeles Lumber,* 308 U.S. 106 [60 S.Ct. 1, 84 L.Ed. 110] (1939). See *Brief for United States as Amicus Curiae* 17–23. Relying on the statutory language and the legislative history, the Solicitor General argues that the 1978 Bankruptcy Code 'dropped the infusion-of-new-capital exception to the absolute priority rule.' Id., at 22.

We need not reach this question to resolve the instant dispute. As we discuss infra, at 189, we think it clear that even if the *Los Angeles Lumber* exception to the absolute priority rule has survived enactment of the Bankruptcy Code, this exception does not encompass respondents' promise to contribute their 'labor, experience, and expertise' to the reorganized enterprise.

Thus our decision today should not be taken as any comment on the continuing vitality of the *Los Angeles Lumber* exception—a question which has divided the lower courts since passage of the

Code in 1978. Compare, e.g., *In re Sawmill Hydraulics, Inc.,* 72 B.R. 454, 456, and (Bkrtcy.Ct.CD Ill.1987) with, e.g., *In re Pine Lake Village Apartment Co.,* 19 B.R. 819, 833 (Bkrtcy.Ct.SDNY 1982). Rather, we simply conclude that even if an 'infusion-of-money-or-money's worth' exception to the absolute priority rule has survived the enactment of § 1129(b), respondents' proposed contribution to the reorganization plan is inadequate to gain the benefit of this exception.

*Los Angeles Lumber* itself rejected an analogous proposition, finding that the promise of the existing shareholders to pledge their 'financial standing and influence in the community' and their 'continuity of management' to the reorganized enterprise was '[in]adequate consideration' that could not possibly be deemed 'money's worth.' *Los Angeles Lumber,* 308 U.S., at 122 [60 S.Ct. at 10]. No doubt, the efforts promised by the *Los Angeles Lumber* equity-holders—like those of respondents—had 'value' and would have been of some benefit to any reorganized enterprise. But ultimately, as the Court said in *Los Angeles Lumber,* 'They reflect merely vague hopes or possibilities.' Id., at 122–123 [60 S.Ct. at 10–11]. The same is true of respondents' pledge of future labor and management skills."

As in *Ahler,* the Debruyckers urge that their skill, expertise, time and effort to the farm operations satisfies the holding of "money's worth" advanced in *Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106, 60 S.Ct. 1. That rationale has been firmly rejected by the Supreme Court in *Ahler.* Nevertheless, the Debtor's further argue that they have made substantial cash contributions to their reorganization plan in the form of inheritance from Mr. Debruycker's father of about $50,000.00. Further, they state they will operate the farm without salary, taking only funds necessary for support. Finally, they rely on *In re Star City Rebuilders, Inc.,* 62 B.R. 983, 14 BCD 1134 (Bankr.W.D.Va.1986) as their last grasp by stating the liquidation of the Debtor would lead to no money to unsecured creditors, who will be partially paid only if Debruycker may continue in

operation. All of these approaches around the absolute priority rule were rejected by the Supreme Court, except for the cash contribution argument. The total unsecured claims equal about $1,257,000.00. The cash contributions, while allowing the Debtor to retain their equity, pales into the "de minimus" catagory, even if one were to accept that the exceptions of *Case* is allowable under the absolute priority rule. In other words, the capital contribution must certainly result in a 100% pay out of unsecured creditors, which is not proposed under the Plan. Finally, the easy answer is that inferred by the *Ahlers* case, namely, there are no exceptions to the absolute priority rule as codified by the 1978 Code. Thus, the only way the rule is satisfied is by payment in full of the senior class. Since the Plan does not satisfy the fair and equitable test, it must be rejected. The Debtor appears to have substantial annual cash flow, and whether such revenue can satisfy payments to the unsecured creditors of 100% of those claims will require amendments to the Plan.

IT IS ORDERED the Debtor's Plan of Reorganization is rejected with leave to amend in fifteen (15) days.