**GUARANTY TRUST CO. OF NEW YORK et al. v. CHICAGO, M. & ST. P. RY. CO. et al., and three other cases.**

(District Court, N. D. Illinois, E. D. November 19, 1925, and September 28, 1926.)

Nos. 4696, 4931, and 5065.

**1. Courts ⟨⟩343.**

In corporate mortgage foreclosure proceeding, power of court to permit party claiming an interest to intervene is discretionary under equity rule 37, 198 F. xxviii.

**2. Courts ⟨⟩343—Petition for leave to intervene in corporate mortgage foreclosure proceeding should be denied, unless it appears that petitioner has real interest, or property is being improperly administered, or that relief cannot be obtained from corporate officers (equity rule 27).**

Petition for leave to intervene in corporate mortgage foreclosure proceeding, which does not show that petitioner has a real legal interest, or that receiver is improperly administering property, or that petitioner as a stockholder has unsuccessfully sought relief from corporate officers and directors under equity rule 27, or that intervention is necessary to secure relief to which petitioner is entitled, should be denied.

**3. Corporations ⟨⟩482(3).**

Stockholders' committee held not entitled to leave to intervene in corporate mortgage foreclosure proceeding.

**4. Railroads ⟨⟩191—Junior bondholders of railroad held not entitled to anticipatory ruling in advance of foreclosure sale on adequacy of bid or fairness of reorganization.**

Where decree for sale of railroad property in mortgage foreclosure proceeding provided for hearing of stock and bondholders on adequacy of any bid or fairness of any reorganization plan before confirmation of sale, held, junior bondholders were not entitled in advance of the sale to an anticipatory ruling as to the adequacy of any bid or the fairness of any reorganization plan.

**5. Railroads ⟨⟩191—Rights of junior bondholders to be heard on objections to reorganization plan held sufficiently protected by foreclosure decree of sale of railroad.**

In proceeding to foreclose mortgages on railroad property, rights of junior bondholders to be heard in support of objections to reorganization plan held sufficiently protected by final decree of foreclosure and sale, providing for hearing before confirmation of sale.

**6. Railroads ⟨⟩186.**

Disqualification or unfairness of trustees, prosecuting proceedings to foreclose mortgages on railroad property, held not sufficiently shown to entitle junior bondholders to intervene.

**7. Courts ⟨⟩343.**

Right of intervention under equity rule 37 is not absolute.

**8. Corporations ⟨⟩482(3).**

Generally, trustee in corporate mortgage foreclosure cases represents all bondholders, and the latter will not be permitted to intervene, unless showing is made that trustee is not unexceptionable.

**9. Railroads ⟨⟩186—Majority of bondholders of railroad may control foreclosure, notwithstanding joinder in reorganization.**

That majority of bondholders of railroad have joined in reorganization plan does not strip them of their rights under mortgages and indentures to control acts of trustees with reference to foreclosure proceedings, nor does such control disqualify trustees to extent justifying leave to junior bondholders to intervene.

**10. Railroads ⟨⟩192—Plaintiffs in proceeding to foreclose railroad mortgage held entitled to have date of sale fixed.**

Plaintiffs in proceedings to foreclose mortgage on railroad property, after the lapse of five months from decree of sale, held entitled to have date of sale fixed, notwithstanding delay desired by junior bondholders.

**11. Corporations ⟨⟩482(8).**

In corporate mortgage foreclosure cases, it is discretionary with the court, but quite common, to fix an upset price.

In Equity. Consolidated suits by the Guaranty Trust Company of New York and another, by the United States Trust Company of New York and another, and by the Binkley Coal Company against the Chicago, Milwaukee & St. Paul Railway Company

and others, to foreclose mortgages on property of the named defendant. On separate motions of Ernest Iselin and others, stockholders' committee, and Edwin C. Jameson and others, junior bondholders, for leave to file petitions for intervention, and on motion of plaintiffs to fix the date of the sale and the upset price. Motions for leave to file intervening petitions denied, and motion to fix date of sale and upset price granted.

See, also, 15 F.(2d) 443.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City, and Tenney, Harding, Sherman & Rogers, of Chicago, Ill. (Edwin S. S. Sunderland, of New York City, and Horace Kent Tenney, of Chicago, Ill., of counsel), for Guaranty Trust Company of New York and Merrel P. Callaway, as trustees.

Stewart & Shearer, of New York City, and Wilson, McIlvaine, Hale & Templeton, of Chicago, Ill. (W. A. W. Stewart, of New York City, and William B. McIlvaine, of Chicago, Ill., of counsel), for United States Trust Company of New York and Edward W. Sheldon, as trustees.

George W. Miller, Carl S. Jefferson, and William L. Hunter, all of Chicago, Ill., for Chicago, Milwaukee & St. Paul Railway Co. and Chicago, Milwaukee & Puget Sound Railway Co.

H. H. Field, O. W. Dynes, and Winston, Strawn & Shaw, all of Chicago, Ill. (Ralph M. Shaw and J. Sidney Condit, both of Chicago, Ill., of counsel), as receivers of Chicago, Milwaukee & St. Paul Ry. Co.

Clay Judson and Victor Elting, both of Chicago, Ill., for Binkley Coal Company.

Geller, Rolston & Blanc, of New York City, and Burry, Johnstone & Peters, of Chicago, Ill. (Edward H. Blanc and Mansfield Ferry, both of New York City, and Bruce Johnstone, of Chicago, Ill., of counsel), for The Farmers' Loan & Trust Company, as Trustee.

Patterson, Eagle, Greenough & Day, of New York City, and Scott, Bancroft, Martin & MacLeish, of Chicago, Ill. (William Greenough, of New York City, and Frank H. Scott, of Chicago, Ill., of counsel), for United States Mortgage & Trust Co., as trustee.

Sullivan & Cromwell, of New York City, and Scott, Bancroft, Martin & MacLeish, of Chicago, Ill. (Philip L. Miller, of New York City, and Frank H. Scott, of Chicago, Ill., of counsel), for William Nelson Cromwell, as trustee.

White & Case, of New York City, Follansbee, Shorey & Schupp, of Chicago, Ill. (Roberts Walker and Jesse E. Waid, both of New York City, and Mitchell D. Follansbee, of Chicago, Ill., of counsel), for Bankers' Trust Co., as trustee.

Lessing Rosenthal, of Chicago, Ill., for stockholders' committee.

Nathan L. Miller, of New York City, and Weymouth Kirkland, of Chicago, Ill., for bondholders' committee.

The motion of Ernest Iselin and others to intervene was denied November 19, 1925, with the following opinion:

WILKERSON, District Judge. In the consolidated cases against the Chicago, Milwaukee & St. Paul Railway Company there is pending a hearing on the application of Ernest Iselin and others for leave to intervene and become parties defendant. The applicants seek permission to act for and represent the stockholders of the railway company herein, and for and on behalf of the railway company, or otherwise, to raise, present, and maintain such contentions, defenses, and issues as the railway company might or could raise, present, or maintain in these proceedings.

[1, 2] Principles which control the granting of applications like the one under consideration are, I think, well established. District Judge Tuttle has summarized them in Acme White Lead Company v. Republic Motor Truck, in 284 F. 580, at page 581, as follows:

"Under equity rule 37 (198 F. xxviii, 115 C. C. A. xxviii), the power of the court to permit a party claiming an interest in the litigation pending in a cause to intervene therein is discretionary. Where, however, as in the present case, it does not appear that the petitioner has a real, legal interest in the subject-matter of the suit, nor that the receiver of this court, which is in possession of all of the property of the corporation involved, is improperly administering it, nor that petitioner, if claiming rights as a stockholder in said corporation, has unsuccessfully tried to obtain from the corporate officers and directors such relief as he desires, as required by equity rule 27 (198 F. xxv, 115 C. C. A. xxv), nor that it is necessary for him to intervene in this suit in order to secure the relief to which he is entitled, his petition for leave to so intervene should be denied."

In Continental & Commercial Trust & Sav. Bank v. Allis-Chalmers, 200 F. 600, 611, District Judge Geiger summarized the rule as follows:

"In considering the petition of Eiseman as a stockholder, for leave to intervene, there is much force in the contention of the com-

plainant that the petition should be accompanied by a proposed answer or other pleading disclosing the defense proposed to be asserted. A bondholder is in a sense a party. He does not appear of record, because the rule of convenience which has been referred to excludes him; but he has an interest in the suit, the assertion and protection of which is committed to the trustee. A stockholder, however, is in no sense a party, and the effect of his intervention is to introduce a new party, or possibly to displace the corporation in which he holds stock, and there is good reason to require at the outset the tender of a pleading which as to form and substance will meet the requirements exacted of one regularly a party to the suit. But I have concluded to consider the petition, to determine whether its substantive allegations are sufficient, either for intervention or as a defense.

"The criticisms which have been made respecting the insufficiency of the petitions for intervention by bondholders are equally applicable here. The mere assertion that a trustee is partial, or the characterization of a situation as fraudulent, collusive, and the like, is insufficient, in the absence of allegations of fact themselves giving rise to an inference of such partiality, fraud, or collusion. It is elementary that Eiseman, as a stockholder, can have no personal or direct interest in the foreclosure suit. As a stockholder he has an interest in having the corporate rights asserted or protected; but, before he can be heard at all, he must be prepared to make a showing identical with that which would enable him, as a stockholder, to commence an independent suit to assert or protect a corporate right. The mere fact that he is seeking to intervene in an existing suit to which the corporation has been made a party does not relieve him from the obligation to make the same showing. Assuming, therefore, that to establish his right to intervene he must meet the requirements of an ordinary bill by stockholders founded on rights which may properly be asserted by the corporation, the first requisite is that he disclose his efforts to secure such action as he desires on the part of the managing directors or trustees of the corporation, and the causes of his failure to obtain such action.

"In other words, the proposed intervener, claiming that the rights of the Allis-Chalmers Company are being sacrificed through unnecessary default, would, in a stockholders' bill, be required to show his efforts, if any, toward securing the necessary action on the part of the directors and trustee, either to prevent the default complained of, or to relieve from the

necessary consequences ensuing therefrom. The intervener doubtless conceived that he brought his case within the well-known exception to the rule by the following allegation in his petition: 'That the said foreclosure proceedings are fraudulent and collusive and were instituted at the request of and in behalf of certain people who desire to reorganize the company for their own profit and to deprive bondholders and stockholders of their just dues; that the officers of the Allis-Chalmers Company, and particularly the president of the said company, are parties to this fraudulent and collusive scheme, and have fraudulently agreed that the said foreclosure proceedings should not be opposed by them, and have not attempted, although the funds are in their hands, to cure the default by paying the coupons on said first mortgage bonds, which were due and payable on the 1st day of January last past.'

"It being likewise elementary that the rule requiring a disclosure of a demand and the efforts made to secure action on the part of the corporation does not apply to situations where compliance therewith is unnecessary because useless, does the petition disclose this exceptional situation? Manifestly not. While the exception exists as stated, it is equally clear that the facts showing the case to come within the exception must be averred with the same clearness and explicitness as is required under the rule itself."

In the case of Conley v. International Pump Company (D. C.) 237 F. 286 at page 288, Hough, Circuit Judge, puts it this way:

"The major part of the moving papers is taken up with complaints of the inequity of a proposed plan of reorganization. I do not think that courts sit to redraw or modify or make suggestions concerning such voluntary business arrangements as reorganization plans. There have been circumstances, and they may arise again, when a chancellor may bluntly refuse to sign a final decree which is intended to carry out a grossly unfair settlement; but it is certainly a curious conception of practice which leads a small body of shareholders to seek to answer a foreclosure bill merely because they are dissatisfied with what the foreclosing complainant says out of court it hopes or even intends to do after the final decree is procured. Indeed, I think prolonged argument reduced the petitioners' application to one proposition, namely, that they should be allowed to show by answer and evidence that the defaults which occasioned the necessity for foreclosure were the result of a conspiracy between the bondholders of this defendant and the officers of the same; the

object of such conspiracy being to precipitate foreclosure when as a matter of fact the company was solvent and able to pay the interest and other charges, failure in respect of which is the gravamen of the foreclosure bill. These are very serious allegations, and are said to require the favorable action of the court, under the controlling authority of Louisville Trust Co. v. Louisville, etc., R. R., 174 U. S. 674, 689, 19 S. Ct. 827, 832 (43 L. Ed. 1130). The ground of that decision, however, is thus stated: 'While not intending any displacement of the ordinary rules or rights of a mortgagor or mortgagee in a foreclosure, we believe that under the circumstances as presented by this record there was error; that the charge, alleged positively, *and supported by many circumstances,* of collusion, * * * was one compelling investigation.'

"It is in my judgment entirely obvious that, while these petitioners make the charge of collusion positively, they fail to support their charge by any circumstances or proof whatever. Yet in many cases I should incline to admit as parties defendant those making charges of such moment, upon their giving reasonable security to make good the expense caused by their intervention, if unsuccessful. In this instance, however, I shall not do so, because of what I believe to be the underlying principle of intervention in equity. Necessary parties to a proceeding are those without whose presence a binding decree could not be made. Interveners are (generally speaking) those who show an equitable claim to present their own individual demands, because and only because the parties already in the action do not, will not, or cannot properly and efficiently present the intervening interests."

[3] Measured by these rules, or by the standards fixed in any of the cases which have been called to my attention, the petition is insufficient, and it would be an improper exercise of the court's discretion to grant this motion upon the showing now before the court, and the motion will be overruled.

Subsequently a motion was made by Edwin C. Jameson et. al., called a bondholders' defense committee, for leave to intervene, and on September 28, 1926, Judge Wilkerson denied the application and delivered the following opinion:

WILKERSON, District Judge. This consolidated cause is a proceeding to foreclose mortgages upon the property of the Chicago, Milwaukee & St. Paul Railway Company and Chicago, Milwaukee & Puget Sound Railway Company. The final decree of foreclosure and sale was entered on April 26, 1926. The following provisions are pertinent to the pending motions:

"Notice of the time and place and terms of sale, describing briefly the property to be sold and referring intending purchasers for a more particular description of the property to be sold to this decree and to the records in the above-entitled causes, and to the statements of the receivers to be filed with the clerk of the court as hereinafter directed, shall be published once a week for at least four weeks. * * *

"On the twenty-first day following the conclusion of the bidding at said sale, or said adjourned sale, or if said day be Sunday or a legal holiday, then on the next day not Sunday or a legal holiday, at 11 o'clock in the forenoon, the special master shall report the result of said sale to this court in the federal court building, city of Chicago, for such orders, judgments, or decrees as may by this court be deemed proper or advisable; and this court reserves the right at said time either to adjourn or postpone the hearing upon such report of the special master, or at said time, or at any other time to which such hearing may be adjourned or postponed, to order the approval or disapproval of said sale, to order such further and other sales, if any, as may be deemed advisable, to hear complaints upon the matters referred to in article VXII hereof, and to make such orders in the premises as it may deem proper. The above-entitled causes are, and each of them is, hereby set for further hearing before this court at the time and place of the making of the above directed report to this court. Notice that such report will be made and such hearing held shall be included in the notice of sale to be published as hereinbefore in this article XIV directed. Such hearing may thereupon be had without any further notice to any party, except as required by said article XVII. * * * "

"The court hereby expressly reserves the right to confirm or not to confirm any sale made as provided in this decree, and to accept or reject any bid or bids which may be made at any such sale."

"Article XVII.

"Date of Sale and Upset Prices—Bidder's Statement and Amounts of Deposits Required to Qualify Bidders.

"The date upon which the sale directed to be made by this decree shall be held will be fixed by this court hereafter upon the application of the complainant trustees under

the mortgages foreclosed by this decree. At such time the court will also fix the amounts of minimum bids or upset prices which will be received for the respective parcels hereinbefore defined, when offered for sale separately, and when all of said parcels are offered for sale together, and the special master shall not receive any bid for any of said respective parcels when offered for sale separately, or for all of said parcels when offered for sale together, less than the respective amounts so to be fixed.

"The special master shall accept no bid from any one who shall not, prior to the offer by the special master of any property for sale under this decree, file with the special master a statement whether or not he proposes to bid on behalf of, or for the benefit of, any corporation organized or to be organized with the intention that it shall become the owner of said property, or any part thereof, or any beneficial interest therein, pursuant to any plan or agreement of reorganization, and, if so, also a complete copy of such plan or agreement, together with a brief statement of the notice theretofore given of such plan or agreement, by publication or otherwise, to persons and corporations interested in the railway company and its property. At the hearing to be held upon the report of the special master referred to in article XIV hereof, the court will hear complaints as to the equity of the provisions of any plan or agreement so filed with the special master affecting the respective priorities of all persons and corporations interested in the railway company and its property, from all bondholders or other creditors, secured or unsecured, or stockholders of the railway company, who before the date of such hearing shall file, with leave of court, their petitions herein for the purpose, specifying in reasonable detail the particulars in which such plan or agreement is alleged by them to be inequitable; and this court reserves exclusive jurisdiction to determine whether the provisions as to which complaints are so made are equitable, and no sale of any property hereunder to any purchaser who is to purchase said property on behalf of, or for the benefit of, any such corporation organized or to be organized with the intention that it shall become the owner of said property, or any part thereof, or any beneficial interest therein pursuant to any such plan and agreement, shall be confirmed if this court shall determine that the provisions of such plan and agreement, or any thereof, are inequitable, or that said plan and agreement does not contain an equitable and timely offer of participation in the reorganization thereby proposed to all persons entitled thereto. The special master's notice of sale shall refer to the foregoing provisions of this paragraph, and if any person or persons who shall have filed with the special master a statement that he or they propose to bid on behalf of, or for the benefit of, any corporation or corporations organized or to be organized with the intention that such corporation or corporations should become the owner of said property, or any part or parts thereof, or any beneficial interest or interests therein, pursuant to any plan or plans or agreement or agreements of reorganization as aforesaid, shall be the successful bidder or bidders for the said property or any part or parts thereof, the special master shall publish once in each week for two successive weeks, in the same newspapers in which he shall have published the notice of sale, a notice that the successful bidder or bidders, as the case may be, have so filed with him a copy of a plan or plans or agreement or agreements of reorganization under which their successful bid or bids were made, and that such copy or copies of said plan or plans or agreement or agreements of reorganization may be examined by any one wishing to do so at the office of the clerk of this court. Such publication shall give notice of the time and place where the hearing hereinabove provided for upon the equity of the provisions of such plan or plans or agreement or agreements of reorganization shall be held.    *  *  *

"In making the sale directed by this decree, the special master shall accept no bid from any one offering to bid, who shall not, at least 12 hours prior to any offering of the property for sale under this decree by the special master, have deposited with the special master and have delivered to him, as a pledge that he will make good his bid in case of its acceptance, in cash or certified check on some national bank or trust company in the city and state of New York, or in the city of Chicago, state of Illinois, acceptable to the special master and made or indorsed payable to his order, or in the securities and claims by this article permitted to be used for such purchase, or partly in cash or certified checks and partly in securities and claims, but in the same relative proportions:

"1. In the case of parcel 1, an amount equal to 5 per cent. of the upset price for parcel 1, fixed as hereinabove provided.   *  *  *

"2. In the case of parcel 2, an amount equal to 5 per cent. of the upset price for parcel 2, fixed as hereinabove provided. * * *

"3. In the case of parcel 3, the aggregate of such sums. * * *

"4. In the case of parcel 4, an amount equal to 5 per cent. of the upset price for parcel 4, fixed as hereinabove provided. * * *

"5. In the case of parcel 5, the aggregate of such sums. * * *

"In case any bidder, after confirmation of the sale to him as hereinafter provided, shall fail to comply within the period of 20 days after the entry thereof with any order of the court requiring or relating to the payment of the balance of the purchase price, or if an appeal be taken from any such order, within the period of 20 days after the service of notice of the entry of the order finally affirming such order on appeal, then the deposit of such accepted bidder shall be forfeited as a penalty for such failure and shall be applied to the payment of the expenses of a resale and toward making good any deficiency or loss in case the property sold to such bidder shall be sold at a less price on any such resale, and to such other purposes as the court may direct."

It will be seen that the provisions of the decree give full opportunity to be heard, and afford complete protection to all stockholders and bondholders with reference to all matters touching the acceptance of bids, the approval of plans of reorganization, and the resale of the property, if that should be found necessary. It would seem impossible to draft a decree which more completely safeguards the rights of stockholders and bondholders. In the light of the provisions of the decree, the pending motions may be examined.

### I. Motion of Jameson Committee for Leave to File Petition for Intervention.

Three drafts of a petition for intervention have been filed by this committee. The first draft, among other things, sets out in great detail charges of fraud in connection with the acquisition by the St. Paul Railway Company of the Terre Haute and Gary lines. There was a long hearing before the court concerning the Terre Haute and Gary transactions, with the result that the charges of fraud were formally withdrawn by counsel for the Jameson committee, and an amended petition tendered to the court. In both the original and amended petition the committee applied to the court as the representative of holders of both refunding and Puget Sound bonds. The Jameson committee then returned the Puget Sound bonds to the depositors, and in the amended and supplemental petition asserts that the bondholders' committee, which represents more than a majority of both refunding and Puget Sound bonds, is acting in a dual capacity, and is therefore disqualified to protect the interest of the refunding bondholders. It is further charged that, as the Guaranty Trust Company, trustee in the refunding bond foreclosure, is subject, by virtue of the terms of the trust deed, to the direction of this committee in matters relating to the sale, the intervention should be allowed.

The other grounds upon which intervention is sought relate to the alleged unfairness to the junior bondholders of the reorganization plan proposed by the committee representing the holders of over 80 per cent. of those bonds. The amended and supplemental petition of the Jameson committee concludes with the following summary of the relief sought:

"(1) That they be given leave to assert their rights in this cause by intervention; such intervention, however, to be in subordination to, and in recognition of, the propriety of the main proceeding.

"(2) That they be heard upon the question of the time and manner of holding the sale of the property of the railway, and of the minimum or upset price to be set by this court upon such property or upon the various parcels thereof in connection with such sale.

"(3) That no sale of said property be had until this court has had reasonable assurance from responsible parties that there will be submitted at said sale either a cash bid in an amount determined by this court to be a fair price for said property, or a bid pursuant to a plan of reorganization which this court has found to be just and equitable to all stockholders and creditors of the railway, and in particular to the refunding bondholders represented by the undersigned.

"(4) That they be heard in support of objections to the plan of reorganization heretofore promulgated by Messrs. Kuhn, Loeb & Co. and the National City Company.

"(5) That this court declare that said plan of reorganization is unjust and inequitable to the holders of refunding bonds of the railway, and that said plan does not constitute a fair and timely offer, to the refunding bondholders, of participation upon just and equitable terms in the benefits of the reorganization proposed therein."

As to the second relief sought, it may be said that the petitioners were fully heard as to the form of the decree at the time of its entry, and upon the application of the plaintiff to fix the date of sale and the upset price.

[4] As to the third point, the court is asked to give an anticipatory ruling as to the adequacy of the bid or the fairness of the plan in a proceeding which is binding upon no one. How is the assurance to be given? If a plan is submitted, and the court should be of the opinion that it is fair, how is the court to require the parties who tender it informally to offer it at the master's sale? The decree provides that all stockholders and bondholders may be heard as to the adequacy of the bid and the fairness of the plan when the master's report is submitted to the court. It would be improper for the court to pass upon this question until an opportunity has been given to all stockholders and bondholders to be heard. And, of course, the court should not enter a finding upon these matters until they are before the court in such a way that its finding may be enforced. Petitioners will have an opportunity to be heard upon the adequacy of the bid and the fairness of the plan when these matters are before the court in the proper way.

A re-examination of this question since the entry of the decree satisfies me that the method provided in the decree for the consideration of bids and plans of reorganization is in harmony with orderly procedure in the court, and that the departure suggested by petitioners would impose upon the court a burden too heavy to be borne; and put the court in the position of announcing rulings and rendering decisions which it would be powerless to enforce. It is not proper that a court should announce in advance how it will decide a case which may be brought before it. Nor, as a matter of law, may plaintiffs be deprived of their rights under the decree until some one has volunteered to submit in advance to the court what he proposes to do at the sale. Plaintiffs are entitled to a reasonable execution of their decree. Petitioners will have their opportunity to be heard, with all other bondholders and stockholders, when the report of sale is submitted to the court. The provisions of the decree accord with well-considered precedents, and are consistent with the orderly performance of the duties of the court.

[5] As to the fourth and fifth points, the rights of petitioners are safeguarded by the provisions of the decree, which provide the time and manner of objecting to the approval of the master's report of sale.

[6] It remains to be considered whether the petitioners have made a showing for a special intervention "in subordination to, and in recognition of, the propriety of the main proceeding." In view of the provisions of the decree as to the right of bondholders to be heard upon the coming in of the master's report of sale, this motion must be treated as one for intervention on the ground of the disqualification of the trustees to represent all of the bondholders in the foreclosure proceeding. Have petitioners made out such a case?

[7, 8] No absolute right of intervention is given by equity rule 37 in cases of this character. Kardo v. Adams, 231 F. 950, 146 C. C. A. 146; Palmer v. Bankers' Trust Co. (C. C. A.) 12 F.(2d) 747. The general rule in corporate mortgage foreclosure cases is that the trustee, being a party to the suit, represents all the bondholders, and that the latter will not be permitted to intervene, unless a showing is made that the trustee is not unexceptionable; for example, that the trustee has or is representing a financial interest in the litigation opposed to that of the bondholders; that the trustee is conspiring with some one to bring about unfair results, and that the trustee is guilty of fraud, or is not acting in good faith. Shaw v. Railroad Co., 100 U. S. 605, 611, 25 L. Ed. 757; Richter v. Jerome, 123 U. S. 233, 246, 8 S. Ct. 106, 31 L. Ed. 132; Continental & Commercial Trust & Savings Bank v. Allis-Chalmers Co. (D. C.) 200 F. 600; Investment Registry, Ltd. v. Chicago & M. Electric R. Co. (D. C.) 213 F. 492; Palmer v. Bankers' Trust Co. (C. C. A.) 12 F.(2d) 747, 752, and cases there cited.

[9] It is charged in the petition for intervention that the trustees are pressing for an early foreclosure and sale, for the purpose of enabling the reorganization managers to bid in the property and dispose of the same under the reorganization agreement of the majority bondholders' committee. It is also charged that the reorganization managers are so directing and controlling the action of the trustees that the trustees are no longer in a position to act impartially for the benefit of all holders of bonds secured by the mortgages, but are acting in all respects subject to the control of the reorganization managers under the plan. These averments are general in their terms. They have been met by specific statements in the affidavits filed in opposition to the motion for inter-

vention. The charges in the petition for intervention have not been sustained. The trustees have acted in strict accordance with their duties under the terms of the mortgages and indentures of which they are trustees. The fact that a majority of the bondholders have joined in a reorganization plan does not strip them of their rights under the mortgages and indentures to control the acts of the trustees with reference to the foreclosure proceedings.

The trustees in this case have obtained a decree in which the right of minority bondholders to be heard upon the acceptance of bids and the approval of plans is fully protected. To a very high degree the trustees have acted in the interest of all the bondholders, giving due effect to the terms of the mortgages and indentures which are binding upon trustees and all bondholders alike. Under the terms of the mortgages and indentures, the majority bondholders were entitled to the decree which has been entered. They are entitled to its execution. When it comes to turning over the property under a reorganization plan, courts will be vigilant to protect minorities against oppression and fraud. They will be equally vigilant to see that dissenting bondholders be not permitted to create a maneuvering value in their bonds.

The rules for which petitioners contend, carried to their logical conclusion, overturn the established law with reference to mortgages and trust deeds, and give to minority bondholders an absolute right of intervention. The broad provisions in the decree for the protection of the rights of all bondholders and stockholders render inapposite Louisville Trust Co. v. Louisville, N. A. & C. R. Co., 174 U. S. 674, 19 S. Ct. 827, 43 L. Ed. 1130, and kindred cases referred to by counsel for the petitioners.

The alleged unfairness of the reorganization plan proposed by the majority bondholders is not a ground for intervention. The decree provides a method for the consideration of that plan, if it is brought before the court. The question here is that of the disqualification of the trustees. And, upon the record before the court, it clearly appears that they are not disqualified by reason of anything done in connection with these foreclosure proceedings, or in the performance of their duties under the mortgages and indentures.

It is charged that the trustee of the mortgage acted as a depositary under the deposit agreements of the bondholders' committee, and later, by reason of that committee having adopted a reorganization agreement, acted under that agreement as depositary for the same bonds. There is nothing in these facts, however, showing disqualification or unfairness of the trustee. Fidelity Trust Co. v. Washington-Oregon Corp. (D. C.) 217 F. 588, 593, 595, 596; Palmer v. Bankers' Trust Co. (C. C. A.) 12 F.(2d) 747, 753.

The fact that a majority of the holders of the refunding bonds have joined with a majority of the holders of the Puget Sound bonds in a reorganization plan furnishes no ground for intervention. It cannot take away from the majority of the holders of the refunding bonds their rights under the terms of their mortgage. Its effect, if any, will be determined by the court when the reorganization plan is before the court in such a way that it can be acted upon judicially.

The motion of Edwin C. Jameson et al. for leave to file the amended and supplemental intervening petition herein is denied, and an order to that effect is entered.

II. Motion of Plaintiffs to Fix Date of Sale.

[10] Five months have elapsed since the entry of the decree of sale. Eighty per cent. of the bondholders insist upon their right to have a date fixed for the sale, to the end that bids may be received and something definite brought before the court for consideration. They assert that so long as the receivership continues they are deprived of any return upon their investment; that a continuance of the receivership will result in further impairment of the good will of the railroad; that the receivers cannot provide at reasonable cost the funds constantly needed for capital improvements upon the properties; that many needed economies in operation cannot be secured during the receivership; and that the efficiency and prosperity of the railroad cannot be completely restored until the termination of the receivership.

Certainly, after the lapse of five months, it would be an unwarranted and arbitrary exercise of the court's power to deny to this great majority of the bondholders the opportunity to take the first step toward working out a solution of their problem. And this is particularly true in view of the provisions of the decree, which reserve to all stockholders and bondholders the right to be heard upon bids which may be made for the properties and plans of reorganization which may be submitted.

Delay is sought for the purpose of mak-

ing an expert examination of the property and accounting records of the railway. But almost as much time has elapsed since the entry of the decree as is now sought for that purpose. It must be borne in mind that the Jameson committee was organized more than 10 months ago. It is in no position to ask further delay, when the rights of the majority of the bondholders to have the decree executed are considered.

It is urged that there should be no sale until Congress has had another opportunity to pass a bill for the refunding of the government loans. It will serve no useful purpose to enter upon a recital of the facts concerning those loans and the attempts to obtain legislation in the past. The view that the court should not even fix a date for the sale until the expiration of the next session of Congress cannot be accepted.

Under the terms of the decree almost two months must elapse before the sale can be held and the master's report brought before the court. If there should be legislation by Congress while a plan of reorganization is under consideration by the court, it will be possible, under the terms of the decree, to adjust the plan to the conditions of the new legislation. In view of the broad provisions of the decree, the appeal for delay on this ground is without merit.

The date of sale is fixed for November 22, 1926, at 11 o'clock a. m., Mountain standard time.

### III. Motion to Fix Upset Price.

The decree provides that, when the court fixes the date of sale, it will also fix the amounts of minimum bids or upset prices which will be received for the parcels to be offered, either separately or together, and that the master shall not receive any bid for such parcels, when offered either separately or together, less than the respective amounts so fixed. The upset prices so fixed are made the basis of the deposits required from prospective bidders, which deposits are to be forfeited in case of the failure of the bidders to make good their bids. So far as the decree is concerned, this is the only real function of the upset price. The decree expressly reserves to the court the right to accept or reject bids after they have been made.

Manifestly the naming of an upset price is not a ruling that a bid as low as the upset price will be approved in the end. It has been pointed out that the court should not be asked to indicate approval or disapproval of a plan which is not before it in such a way that the ruling of the court can be made effective. It is likewise true that the court cannot be required to make an anticipatory ruling as to the adequacy of a bid until it is formally before the court for action and is considered in all of its aspects. The decree requires bidders who present a plan of reorganization to submit the plan with their bids, and the adequacy of a bid as furnishing a basis for determining the distributive shares of those bondholders who elect not to participate in the reorganization must be viewed in the light of all of the elements of the proposed plan. It is not for the court to instruct prospective bidders with reference to their bids. Bidders must exercise their own independent judgment. And when the bids are before the court their adequacy will be determined in the light of all the circumstances after an opportunity has been given to all stockholders, bondholders and other parties in interest to be heard. About all that can be said of the "upset price," to use the language of counsel for the majority bondholders, is that *"it reduces the chances that the confirmation of the sale will have to be withheld because of the inadequacy of the bid."*

[11] What the court is doing in naming an upset price is merely to draw a line below which it will refuse to consider bids. It is discretionary with the court, but quite common, to fix an upset price. Palmer v. Bankers' Trust Co. (C. C. A.) 12 F.(2d) 747, 754, and cases cited. Some judges, following the course of strict consistency, have the view that the court should consider all bids, and should never make an anticipatory ruling as to the adequacy of a bid until the bidder is before the court in such a way that his bid can be accepted or rejected, and, if accepted, enforced by the court.

There is much to be said in support of this view. Plaintiffs are entitled in the end to have the mortgaged property sold to satisfy their debt. If the property does not bring the upset price, they would be entitled at some time to a resale at a lower price. And the court is always in a position to protect the rights of all parties upon the formal consideration of a bid actually made.

The decree here, however, calls for an upset price. The question is entirely different from that of the adequacy of a bid which has been actually made, and which is formally before the court for acceptance. The court is asked to indicate its view as to the very lowest bid for whose adequacy the proponents will be permitted to contend when it is brought before the court. If the

adequacy of a bid is fairly debatable, and no higher bid is offered, certainly a chance should be given upon a formal hearing to support the bid. It was with this in mind that the hearing as to the upset price has been upon affidavits.

The committee representing over 80 per cent. of the refunding and Puget Sound bonds ask the court to fix an upset price of $100,000,000, distributed as follows: $40,000,000 for the Puget Sound property; $50,000,000 for the property (other than the Puget Sound bonds) subject to the refunding mortgage; and $10,000,000 for the unpledged assets.

The Jameson committee, which has been fully heard on this application, asserts that these upset prices are too low, and claims that $250,000,000 is the lowest upset price which should be named, to be distributed as follows: $80,000,000 for the property subject to the Puget Sound mortgage; $150,000,-000 for the property (other than the Puget Sound bonds) subject to the refunding mortgage; and $20,000,000 for the unmortgaged assets.

The property (other than Puget Sound bonds) covered by the refunding mortgage is to be sold subject to senior liens of more than $156,000,000. Out of the issue of $181,-684,500 of Puget Sound bonds, $154,489,500 are pledged under the refunding mortgage. Taking these facts into consideration, it is clear that the Jameson committee is contending for upset prices, in which undue emphasis is placed upon those elements of physical valuation which are of dominant importance in fixing a valuation for rate-making purposes; and the valuation here is not for rate-making purposes. It is a minimum valuation for purposes of sale, where the plaintiffs are entitled to require a sale within a reasonable time.

One fact alone precludes the adoption of these excessive upset prices at the insistence of the Jameson committee. A very considerable portion of the bonds represented by the Jameson committee were acquired by their present owners, either shortly before the receivership or during the pendency of this litigation. These were purchased at prices around 50 cents on the dollar. Their owners are here protesting that more than 80 per cent. of the junior bondholders shall not even be given a chance to have a bid for the property considered, except upon terms which will give to the dissenting bondholders a distributive share in the proceeds of the sale yielding more than 80 cents on the dollar—a profit to the dissenters of several million dollars. Nothing more than the statement of this proposal is required. It cannot be adopted. Palmer v. Bankers' Trust Co., supra; Investment Registry, Limited, v. Chicago & M. E. R. Co. et al., 212 F. 594, 609, 129 C. C. A. 130.

Taking into consideration the evidence as to the value of the property, its earning capacity, past and present, the history of the road, and the market prices of the securities represented in this foreclosure, the court fixes the upset prices pursuant to the terms of the decree as follows: Parcel 1 (Puget Sound property), $42,500,000. Parcel 2 (property subject to refunding mortgage other than Puget Sound bonds) $67,-500,000. Parcel 3, the aggregate of the sums required as to parcel 1 and parcel 2. Parcel 4 (unpledged assets), $12,500,000. Parcel 5, the aggregate of the sums required as to parcel 1, parcel 2, and parcel 4.

The order fixing the date of sale and upset prices will be entered.