## ANGEVINE v. CITY OF SESSER et al.
### Civil No. 71–D.

District Court, E. D. Illinois.
July 1, 1941.

Louis Clements, of Danville, Ill., for trustee.

Bookwalter, Carter & Gunn, of Danville, Ill., for City of Sesser.

Lindley, Jones, Grant & Sebat, of Danville, Ill., and Leonard C. Mead, of Geneva, Ill., for intervener.

LINDLEY, District Judge.

This cause involves the foreclosure of a trust deed upon the water plant of the City of Sesser and delivery of same under decree of strict foreclosure in satisfaction of the debt to the plaintiff trustee and a proposed sale by the trustee to the City of Sesser under a provision of the decree of foreclosure. It has been pending for a number of years, and on December 9, 1939, the court entered the decree of strict foreclosure. In pursuance thereof it issued to the trustee for the bondholders a deed for all the property and the grantee has since been charged with responsibility for its operation. More recently negotiations between the city and the trustee resulted in an offer in pursuance of the provisions of the earlier decree, whereupon the trustee petitioned for leave to sell the property to the city. An order of sale was entered thereon in April, 1941.

On June 3, 1941, without leave of court, The Maccabees, holder of water certificates secured by the trust deed, filed an intervening petition in which it was averred that intervenor was the owner of certificates in the sum of $45,000, issued by the city in 1924; that it had received thereon only one payment of interest and no part of the principal; that petitioner had not been advised of the foreclosure suit or the decree entered in pursuance thereof and that the order of sale should be vacated, for the reason that it proposes to use the greater portion of the purchase price for the payment of fees. Petitioner attacked the allowances made in the decree of foreclosure on the ground that they are unreasonably large. It prayed that the city be required to file an appraisal and the trustee an account; that the court review and fix in reasonable amounts the items of expense objected to and determine the amount to be paid to the certificate holders and that the sale be stayed until the court should pass upon the intervening petition.

After hearing had commenced, petitioner asked and was given leave to file an amendment in which it attacked the decree of foreclosure entered December 9, 1939, in that it in effect wiped out the rights of the trustee and the certificate holders to recover from the city diverted water funds. It is evidence that the decree effectuates such a result and, further, that it releases the city from liability for its unpaid water hydrant rentals due the water fund. In the amendment petitioner again objected to the fees and prayed that the decree of foreclosure be modified by striking out the provision complained of and that the decree of sale be vacated.

It is perhaps well to refer to some of the evidence upon which the court relied in entering the original decree of foreclosure. Evidence was taken by a special master and, before the decree was entered, supplemental parol testimony was submitted to the court. In 1924 it executed a trust deed covering its water plant and securing an issue of $225,000 in water certificates. No interest was paid thereon after 1926 and no part of the principal was ever paid. Neither the trustee under the trust deed nor the bondholders made any attempt or took any action of any kind to enforce the rights of the certificate holders until 1939. The Chicago Title and Trust Company,

original trustee, having resigned, the present trustee was in that year designated as successor trustee as provided in the trust deed. At that time the city, located in the coal mining district of Southern Illinois, had decreased in population more than 50 per cent so that there were approximately only 2,000 inhabitants remaining.

During this thirteen year period the coal mines upon which the livelihood of the people of the city almost entirely depended were closed down and the citizens remaining in Sesser lived without employment. At the time of entry of the decree of foreclosure approximately 80 per cent of the inhabitants were dependent upon relief. Almost 60 per cent had left the community. The water plant was not cared for or properly maintained and retrograded to the point where it was practically worthless. Sesser had well-nigh become a "ghost town." The city was in default under the trust and in payment of hydrant rentals as provided in the ordinance. Furthermore it had diverted moneys from the water funds to other corporate purposes. Under the then existing laws of Illinois, the relief to which the trustee was entitled was a decree of foreclosure directing sale, not of the property but of the use thereof for the least number of years of use bid, not to exceed fifty. The plant was insolvent. Its earnings were insufficient to meet its expenses. The value of its use from year to year was nil and it was apparent that the certificate holders would, by virtue of such decree, obtain no relief of any character and no return whatever upon their original investment.

The only other remedy to which the trustee was entitled was an accounting from the city for diverting funds and a judgment for unpaid hydrant rentals. But the evidence was clear that not to exceed 20 per cent of the taxes of Sesser were being or could be recovered; that the values of real estate and property in general were so demoralized that the city was not able to meet its current expenses; that there was no method by which tangible results could be obtained through judgment against the city for violation of its statutory duties. The problem confronting the court then was whether the bondholders should be required to bid for the use of the property— a thing of no value—and to attempt to recover from the city for its diversion—another thing of no value. Such relief would

have amounted to nothing, so far as the certificate holders were concerned.

Accordingly, it was deemed only equitable to direct strict foreclosure whereby not a worthless use from year to year would be purchased at foreclosure sale but whereby the fee simple title to the plant would pass to the trustee. There was some doubt as to whether this could ordinarily be done under the statutes of Illinois. But the only possible objector was the city, for it was the only party interested in the fee to the water plant. Its right to object was waived. The city agreed that if the demand against it for diverted funds should be released it would not object to the taking of the entire fee to the property by the trustee. In view of the city's insolvency, the impossibility of recovery of any money from it for the certificate holders and the fact that the only possibility of recovery lay in acquisition of the fee, the decree was deemed equitable and in fact essential for the protection of the certificate holders.

The court, as a chancellor, endeavored to protect the certificate holders by entry of the decree, and thereby obtained an outright title not otherwise obtainable. It is this provision of the decree entered for its protection that intervenor two years later seeks to set aside.

 Under the terms of the trust deed the trustee represented all of the certificate holders. It alone had the right to speak for them. In the absence of fraud, appearance of the trustee was appearance of the certificate holders. The trust deed vested in the trustee and the majority of the certificate holders the exclusive right to foreclose the mortgage and to direct the handling of the administration of the trust and this provision was, in the absence of fraud, binding upon all minority holders. The authorities clearly establishing this doctrine are collected in 108 A.L.R. 88. It is generally held in the cases there cited that the individual bondholders are not proper parties and not entitled to notice and have no right to intervene in the foreclosure proceedings. Palmer v. Bankers' Trust Co., 8 Cir., 12 F.2d 747; Guaranty Trust Co. v. Chicago, M. & St. P. Ry. Co., D.C., 15 F.2d 434; Block v. Mansfeld Mining & Smelting Co., D.C., 23 F.Supp. 700; American Trust & Safe Deposit Co. v. 180 East Delaware Building Corp., 262 Ill.App. 67; First National Bank v. Bryn Mawr Beach

Building Corp., 283 Ill.App. 276; Firebaugh v. Seegren, 265 Ill.App. 381; Cohen v. Central Republic Trust Co., 282 Ill.App. 569; Pearlman & Co. v. Lincoln-Belmont Building Corp., 251 Ill.App. 135; Continental & Commercial Trust & Savings Bank v. Allis-Chalmers Co., D.C., 200 F. 600; Barney v. Froehlich, 286 Ill.App. 41, 3 N. E.2d 89.

In this petition there is no allegation of fraud; no averment that the trustee is representing any financial interest adverse to the certificate holders or that it is conspiring with any one to bring about unfair results. As said by Judge Wilkerson in Guaranty Trust Co. v. Chicago, M. & St. P. Ry. Co., D.C., 15 F.2d 434, the mere assertion that a trustee is partial, or the characterization of a situation as fraudulent, collusive, and the like, is insufficient, in the absence of allegations of fact themselves necessarily implying such partiality, fraud, or collusion. There is no absolute right of intervention. An individual holder should not be permitted to intervene unless proper showing is made to require such intervention.

But irrespective of the lack of right to intervene, we have here an attempt by intervenor to upset a decree entered in protection of its interests by a chancellor after full hearing and consideration of all the facts involved, a hearing at which the authorized representative of the intervenor appeared and invoked and procured in behalf of intervenor and all others similarly located what the court at that time deemed to be the best thing obtainable. The intervenor, even if properly in court, is in no better position to object to the decree than if it had been present at the hearing, for having been represented, the decree is binding upon it. The time for appeal has expired. The rights of the parties in reliance upon the terms of the decree have been fixed, and it is too late for intervenor to object, even were the objection meritorious. Furthermore, none of the essentials for granting a new trial or rehearing are present.

As to the petition to sell, the evidence presented to the court at the time of the hearing thereon disclosed that for the last eighteen months the net income of the plant was approximately $175; that repeated assiduous efforts to obtain a purchaser had met with abject failure; that the best offer obtainable had been $26,000 and that this offer itself was conditional, uncertain and indefinite.

When the trustee took the property under the decree of strict foreclosure, there were 220 water customers. In the sixteen months following, the number increased to 288. The property was then in a greatly depreciated and even dangerous condition. The mains were leaking to such an extent that water was necessarily pumped for ten to twelve hours per day. The improvements made reduced this to four hours. The customers were unable and refused to pay their bills. The sanitary conditions were bad. The Public Health Department of the State of Illinois was threatening to terminate operation of the plant. The distribution system and meters had never been cleaned or repaired. None of the gate valves would operate. The meters had to be taken out, cleaned, repaired and replaced and about 100 additional meters purchased. The electrical equipment had been assembled without fuses and a short circuit would have destroyed the motors or caused a serious fire. There were many other defects, all resulting in a situation where the plant was not earning anything and was of little or no value because of the loss of inhabitants and the unusually unfortunate conditions abiding in the community.

These and other facts were presented to the court at the time of the hearing on the petition for sale and again the trustee was representing the certificate holders and again intervenor's rights were being protected. The court, after hearing this evidence and all other facts involved concluded that the asset held by the trustee was one of very dubious value; that the trustee had no capital with which to improve it; that the earnings were insufficient to produce funds sufficient to rehabilitate the plant; that there was no possible chance to sell the property for as much as the city offered to pay for it and that the best possible protection for all the certificate holders demanded that the offer to buy the plant for some $36,000, the highest and best offer that could be obtained, be accepted. Accordingly, the order of sale was entered. Intervening petitioners do not claim that any better offer could be obtained; they do not aver that the property has any tangible value in excess of the amount offered. They do not offer to protect the court against expense if this order of sale should be vacated and additional attempt made to obtain another offer. They

502

merely say that they are not getting enough money for their certificates. Obviously, this is true. This is not the first time when bondholders or certificate holders have appeared in court as the owners of securities which perhaps should never have been issued and complained because of the inadequate return. But we must face the facts and when we have a property which is valueless to anybody other than the city, for which the city, by proceeds of new securities, will pay us more by far than we are able to obtain from any other sources, equity demands that the chancellor protect his beneficiaries in the best manner possible. The court can not create values where there are none. It can only exercise its best judgment in a bona fide attempt to realize as much as possible for the unfortunate investors. In this situation the intervening petitioner discloses no meritorious ground, even if it is properly in court, to complain of the order of sale.

Complaint is made that no report had been filed by the trustee. At the time of the hearing upon the petition for sale the court received testimony as to the results of the operation of the plant for the preceding eighteen months and learned that the operating expenses and the income were about the same; that no tangible profit resulted from operation. The trustee advised the court that a formal report including the period from January 1, 1940, to June 1, 1941, would be filed and, since this hearing, the Clerk calls my attention to the fact that such a detailed report was filed on June 25, 1941. It is in accord, in substance, with the evidence submitted to the court at the time of the hearing of the petition for sale.

Complaint is also made by intervenor that an appraisal is not of record. I do not know whether an appraisal had been completed at the time the petition for sale was heard but I was advised that it was nearing completion or was completed or was in the making and that it would show a reproduction value of approximately $75,000. Since the hearing on June 24, 1941, the detailed appraisal has been filed. Consequently intervenor's complaints as to failure to file report or appraisal have been remedied.

 In the intervening petition and the amendment thereto, the intervenor objects to payment of fees and expenses heretofore allowed in the decree. I take it that such allowances are always within the discretion of the court and that any reasonable complaint of bondholders may be entertained until distribution is ordered. Certainly no court of equity desires that any allowance, even though entered upon evidence submitted, should be sustained if there is substantial reason for its disallowance.

Finally I conclude that the intervening petitioners are without right to intervene to object to the decree of foreclosure or to the order of sale. But irrespective of that right, upon the merits, because of the reasons I have stated, the motion to amend the decree of foreclosure must be and is hereby denied. The motion to vacate the order of sale is denied; the prayer for appraisal and account, in view of the filing of each of the latter, is denied. The sale shall proceed as provided in order of sale but there shall be no distribution of proceeds of sale until the further order of this court and upon completion of the sale, the proceeds shall be brought into court to await an order of distribution by this court after a hearing at which, if intervening petitioner desires, it can be heard and present evidence bearing upon the propriety of the allowances complained of. In all other respects the intervening petitions are denied. Proper order may be submitted.